**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roy Lee PIERCE, James Evans,
Defendants–Appellants.**

**No. 88–2985.**

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1990.

Rehearing and Rehearing *En Banc*
Denied Feb. 14, 1990.

Ardon E. Moore, Jr., Tyler, Tex., (Court-appointed), for Pierce.

Roy Merrell, Dallas, Tex., for Evans.

Joseph Douglas Wilson, U.S. Dept. of Justice, Washington, D.C., Bob Wortham, U.S. Atty., Ronald J. Sievert, Asst. U.S. Atty., Tyler, Tex., Mervyn Hamburg, U.S. Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

## AMENDED OPINION

Before GOLDBERG, POLITZ and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants Roy Lee Pierce and James Evans were convicted in the district court on drug trafficking charges arising from a conspiracy to ship cocaine from Los Angeles, California for distribution in Tyler, Texas. A jury found Pierce guilty of conspiring to distribute cocaine in violation of 21 U.S.C. § 846 and possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Evans pled guilty to a conspiracy charge during trial. Both Pierce and Evans raise numerous challenges to their convictions and sentences. Finding no merit in his contentions, we affirm Pierce's conviction and sentence. Having determined that Evans's guilty plea was accepted in violation of Rule 11, we reverse his conviction.

### I.

### BACKGROUND

On December 12, 1987, Angela Evans, James Evans's wife and Pierce's sister-in-law, attempted to ship a Christmas-wrapped package from Los Angeles to Tyler via American Airlines. Mrs. Evans first arrived at the American Airlines terminal to pick up a package that had been sent to her from Tyler. After obtaining this package, she left briefly and returned with the package she intended to send. She presented the package to American employee James McAdam, who inquired about its contents. Mrs. Evans replied that the package contained an iron. After Mrs. Evans left, McAdam became suspicious because he believed the package was not heavy enough to be an iron. In an effort to identify the contents, McAdam x-rayed the package. The x-ray revealed not an iron, but an opaque mass. McAdam alerted his supervisor, Eloise Ferguson, and pursuant to airline policy they opened the package. Inside was a large quantity of rock cocaine.

DEA agents arrived shortly after the package was opened. They conducted a field test which identified the substance as cocaine. A small portion was removed and sent for further testing at the Los Angeles County Sheriff's Department, then a controlled delivery was made by forwarding the package to its intended destination.

After setting up surveillance at the Tyler airport, agents observed Pierce drive up in

a vehicle with Hazel Crumpton, to whom the package was addressed. While Pierce waited in the car, Crumpton went into the terminal and picked up the package. She was arrested as she attempted to leave. Pierce made a futile attempt to escape in his car, but his path was blocked by a DEA vehicle. Meanwhile, James and Angela Evans were arrested by officers executing a warrant to search their Los Angeles apartment.

Pierce and James Evans were indicted with their two co-defendants in January, 1988. Crumpton and Angela Evans pled guilty and testified on behalf of the government. After one aborted attempt to plead guilty, James Evans eventually changed his plea to guilty during trial. The jury subsequently found Pierce guilty on both the conspiracy and possession counts. The district court, applying the sentencing guidelines, sentenced Pierce to 262 months in prison and a three year term of supervised release. Evans was sentenced to 360 months in prison and an eight year term of supervised release. Pierce and Evans now bring this appeal, challenging the validity of their convictions and sentences. We address each in turn.

## II.

### ANALYSIS

#### A. PIERCE

##### 1. *Motion to Suppress*

■ Before trial Pierce moved to suppress the evidence obtained when the package was searched at the American Airlines terminal in Los Angeles, on the grounds that the warrantless search violated his Fourth Amendment rights. After an evidentiary hearing the court denied the motion, ruling that there was no Fourth Amendment violation because the initial search was conducted by a private party. In reviewing a district court's ruling on a motion to suppress based on live testimony at a suppression hearing, we must accept the district court's factual findings as true unless they are clearly erroneous. *United States v. Fernandez*, 887 F.2d 564, 567 (5th Cir.1989).

■ Pierce first argues that the court's finding that the package was initially searched by airline employees is clearly erroneous. He contends that the package was actually opened by the DEA. This contention is meritless. The sole basis for Pierce's argument is the so-called "tell-tale affidavit" of Agent Paul Black, which indicates that the DEA did open the package first. However, Agent Black testified at the suppression hearing that he subsequently learned that his affidavit was based on second-hand reports which were either incorrect or misinterpreted. On the other hand, the court's finding is amply supported by the evidence. Airline employees and DEA agents unanimously testified that the package was opened by Ferguson and McAdam. The court's finding is not clearly erroneous.

■ Pierce next alleges that the airline employees were acting as instruments or agents of the government when they opened the package. Pierce is correct in asserting that the Fourth Amendment can be violated by a search conducted by a private party acting as an agent or instrument of the government. *See Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). However, the airline employees were not acting in such a capacity in this case. Pierce largely bases his argument on a Ninth Circuit test for determining whether a private party has acted as an agent of the government. That circuit has held that the two critical factors in an "instrument or agent" analysis are: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *United States v. Miller*, 688 F.2d 652, 657 (9th Cir.1982); *United States v. Walther*, 652 F.2d 788, 792 (9th Cir. 1981). We previously applied this test in *United States v. Bazan*, 807 F.2d 1200 (5th Cir.1986). For purposes of reviewing Pierce's argument we will once again assume the adequacy of this formulation. *See id.* at 1203.

Pierce is unable to satisfy the second prong of the *Walther* test. Following the suppression hearing the district court dictated its findings and conclusions into the record. The court first found that American Airlines, like other airlines, has a "valid reasonable policy" of exercising caution with and opening suspicious packages. The court further found that McAdam and Ferguson had opened the package pursuant to that policy. Both of these findings are supported by the evidence. There is no evidence that the package was opened at the direction, or even the suggestion, of the DEA. We conclude that the airline employees opened the package to further the airline's own ends, not solely to assist law enforcement officers. *See United States v. Koenig*, 856 F.2d 843, 849 (7th Cir.1988) (holding that Federal Express employees were acting in furtherance of the company's own ends when they opened a package pursuant to company policy). Thus, Pierce's argument fails the *Walther* test. Accordingly, we hold that the airline employees were not acting as instruments or agents of the government when they opened the package.

 Once it is established that airline employees, acting privately, opened the package, this case is governed by *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In *Jacobsen*, the employees of a private freight carrier opened a damaged package and discovered a plastic bag containing white powder inside. The DEA was called. Upon arrival, agents reopened the package, examined the contents, and conducted a chemical field test which identified the substance as cocaine. Reversing the holding of the court of appeals that the Fourth Amendment had been violated, the Supreme Court first reiterated the rule that the Fourth Amendment proscribes only governmental action. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656. The Court then held that where a package containing narcotics is originally opened by a private carrier, the Fourth Amendment is not violated by a subsequent search by government agents that does not exceed the scope of the private search. *Jacobsen*, 466 U.S. at 115–121, 104 S.Ct. at 1657–1660. The court additionally held that the chemical field test, which could disclose only whether or not the substance was cocaine, did not compromise any legitimate interest in privacy.[1] *Jacobsen*, 466 U.S. at 122–126, 104 S.Ct. at 1661–1663.

Applying *Jacobsen* to the present case, we conclude that neither the initial search by airline employees, nor the subsequent search by DEA, nor the chemical field test violated Pierce's Fourth Amendment rights. Accordingly, the district court did not err in denying Pierce's motion to suppress.[2]

### 2. Jencks Act

 Angela Evans was interviewed before trial by Assistant U.S. Attorney Ronald Sievert, who took notes during their conversation. At trial, after Evans testified on behalf of the government, Pierce moved for production of these notes under the Jencks Act. He now alleges that the failure of the government to turn over Evans's pretrial "statement" violates the Jencks Act. We disagree. The Jencks Act provides that upon a defendant's motion the court shall:

1. Pierce argues that agents in this case exceeded the scope of the permissible field test because after they identified the substance in the field they took a small sample and sent it for further analysis. Pierce relies on *United States v. Mulder*, 808 F.2d 1346 (9th Cir.1987). In *Mulder*, agents, rather than conduct a field test, removed a sample of the substance and sent it for in-depth analysis. The Ninth Circuit refused to expand the *Jacobsen* field test rule, reasoning that unlike a field test, in-depth chemical analysis can reveal more about a substance than whether or not it is an illegal narcotic. *Id.* at 1348. Pierce's reliance on *Mulder* is misplaced.

Unlike *Mulder*, in this case agents had already identified the substance as cocaine. Therefore, Pierce no longer had a protectable privacy interest in the identity of the substance when it was sent for in-depth testing.

2. The government also contends on appeal that Pierce lacks standing to challenge the search at the Los Angeles airport. Since we have determined that there has been no Fourth Amendment violation, we need not consider the government's contention.

order the United States to produce any *statement* (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. 18 U.S.C. § 3500(b) (emphasis added). Pierce was not entitled to view Sievert's notes because they do not constitute a "statement" of the witness.

The Jencks Act defines a statement as: (1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such statement.... 18 U.S.C. § 3500(e). This court has previously held that an agent's interview notes are not "statements" of the witness under § 3500(e) unless the witness "signed or otherwise adopted or approved the report," 18 U.S.C. § 3500(e)(1), or the notes were "substantially verbatim reports" of the witness interview, 18 U.S.C. § 3500(e)(2). *United States v. Welch*, 810 F.2d 485, 490 (5th Cir.), *cert. denied*, 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). Neither is the case here. In order for interview notes to qualify as a statement under § 3500(e)(1) the witness must have signed, read, or heard the entire document read. *United States v. Hogan*, 763 F.2d 697, 704 (5th Cir.1985). Although Pierce's counsel thoroughly cross-examined Angela Evans, he was unable to produce any evidence that one of these three conditions was met. Similarly, there is no evidence that any portion of Sievert's notes was a substantially verbatim transcription of Evans's statement.

 Pierce further argues that the district court erred by not conducting an *in camera* inspection of the notes to determine whether they qualify as Jencks material. The district court has a duty to inspect documents *in camera* if a timely request is made by the defense *and* some indication exists in the record that the notes meet the Jencks Act's definition of a statement. *United States v. Hogan*, 763 F.2d at 704; *United States v. Edwards*, 702 F.2d 529, 531 (5th Cir.1983). Pierce made a timely request that the court review the documents, but he failed to make any showing that the notes qualified as Jencks material. As mentioned above, Angela Evans was thoroughly cross-examined by Pierce's counsel, who could easily have asked her whether Sievert wrote passages down verbatim or read her the document in its entirety. In *United States v. Hogan, supra,* such testimony was elicited from a government witness. In that case the witness testified that the interviewing agent wrote down "many of his statements verbatim...." *Id.* at 701. Accordingly, we remanded that case for an *in camera* inspection to determine whether the notes qualified as a statement under § 3500(e)(2). *Id.* at 704. However, where, as here, there has been no showing by the defendant that a document will qualify as Jencks material, the district court is not obligated to inspect the documents *in camera*, and the court in this case did not err in refusing to do so.

### 3. *Sufficiency of Evidence*

 Pierce contends that the evidence is insufficient to sustain his conviction for possession with intent to distribute because he never had possession of the cocaine. In evaluating such a claim we examine the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the jury verdict. *U.S. v. Lindell*, 881 F.2d 1313, 1322 (5th Cir.1989). The evidence is sufficient to sustain the jury's verdict if a rational trier of fact could have found all essential elements of the offense in question beyond a reasonable doubt. *U.S. v. Ayala*, 887 F.2d 62, 67 (5th Cir.1989). In this case, the jury could properly have found Pierce guilty of possession under the vicarious liability doctrine of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under the theory of *Pinkerton*, a conspirator can be found guilty of a substantive offense committed by a coconspirator and in furtherance of the conspiracy, so long as the conspirator's acts are within the reasonably foreseeable scope of the

conspiracy. *Id.* We have previously applied this doctrine to possession offenses. *United States v. Hodges,* 606 F.2d 520, 523 (5th Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). Pierce was convicted of conspiracy to distribute cocaine, and the evidence is clear that at least two of his co-conspirators had possession of the cocaine in furtherance of that goal. Since the jury was given a proper *Pinkerton* instruction, the evidence is sufficient to sustain Pierce's possession conviction on this basis. *See United States v. Acosta,* 763 F.2d 671, 681 (5th Cir.), *cert. denied,* 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

### 4. *Variance*

■ Pierce claims that there is a fatal variance between the allegations in the indictment and the government's proof at trial. The indictment, he points out, charges him with possessing and conspiring to distribute "cocaine", while the evidence shows that the substance involved was "cocaine base". Pierce is not entitled to relief on this ground. Cocaine base is merely an isomer of cocaine. Therefore we doubt that a variance exists at all. However, even if we assume there is a variance, it would not be fatal. In order for a variance to require reversal it must "affect the substantial rights of the accused either (1) by insufficiently informing him of the charges against him such that he is taken by surprise and prevented from presenting a proper defense, or (2) by affording him insufficient protection against reprosecution for the same offense." *United States v. Sheikh,* 654 F.2d 1057, 1066 (5th Cir. Unit A Sept. 1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). A variance between cocaine and cocaine base is plainly harmless under this test. *See United States v. Kramer,* 711 F.2d 789, 797 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983) (holding that variance between "amphet-amines" and "methamphetamines" was "plainly harmless").

### 5. *Sentencing Guidelines*
#### a. Pierce's Role in the Offense

■ Pierce contends that the district court erred by increasing his base offense level because of his role in the offense. Section 3B1.1(b) of the Sentencing Guidelines directs the sentencing court to increase the offense level by three "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." We find no error in the court's application of § 3B1.1(b).

The district court's determination that Pierce was a manager or supervisor is a finding of fact reviewable under the clearly erroneous standard. *U.S. v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). The testimony of co-conspirators Hazel Crumpton and Angela Evans provide ample support for this finding. Crumpton testified that Pierce recruited her into the conspiracy by explaining to her how he could get cocaine from California to people in Tyler. She testified that Pierce had already worked out things such as prices and manner of transportation. Mrs. Evans's testimony made it clear that it was Pierce who arranged for each shipment. It was Pierce, for example, who instructed her to send the December 12, 1987 package to Hazel Crumpton, whom she had never met. The court's finding that Pierce was a manager or supervisor is not clearly erroneous.

■ Likewise, the court's determination that the activity was "otherwise extensive" is not clearly erroneous.[3] Pierce was involved in a conspiracy to ship cocaine halfway across the country for distribution. Hazel Crumpton and Angela Evans both testified about previous shipments made pursuant to the conspiracy, at least some

---

**3.** We agree with Pierce that his offense did not involve "five or more participants." Application Note 1 to § 3B1.1 defines a participant as a person who is criminally responsible for the commission of the offense, and the evidence indicates that there were only four "participants" in the offense at issue in this case.

of which were larger than the one seized at the Tyler airport. There was also testimony concerning additional persons whose services were indispensable to commission of the offense. For example, Angela Evans named at least two suppliers in California from whom she obtained cocaine to be shipped to Tyler, and Hazel Crumpton testified that a man named "Geno" had accompanied James Evans on at least one trip to Tyler.[4] We conclude that the district court could properly have found that Pierce was a manager or supervisor of criminal activity that was "otherwise extensive." Accordingly, Pierce is not entitled to relief on this ground.

### b. Obstruction of Justice

█ § 3C1.1 of the sentencing guidelines provides that the court is to increase the offense level by two:

> If the defendant willfully impeded or obstructed or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense....

U.S.S.G. § 3C1.1. Pierce contends that the court erred by increasing his offense level under this section. We disagree.

The court's finding that Pierce obstructed justice is reviewed under the clearly erroneous standard. *United States v. Franco-Torres*, 869 F.2d 797, 800 (5th Cir. 1989). Our only inquiry is whether there was sufficient evidence in the record to permit the sentencing judge to conclude that Pierce had obstructed justice. *Id.* We conclude that there was. The evidence reveals that at the time of his arrest Pierce attempted to flee in his car. Pierce argues that flight alone is not sufficient to consti-

tute obstruction of justice. We need not answer that question, however, because the evidence also reveals that Pierce attempted to influence the testimony of Angela Evans. Mrs. Evans testified that after the indictment was returned Pierce approached her and asked how much money it would take for Evans to testify that the shipment was Hazel Crumpton's doing and that he was not involved. Pierce points out that Mrs. Evans also stated that she didn't know how serious Pierce was when he made his proposal. However, the pre-sentence report relies on this incident to establish that Pierce obstructed justice, and Mrs. Evans's testimony is sufficient evidence to permit the district court to conclude that Pierce attempted to influence her testimony. Since attempting to influence a witness's testimony is one of the examples of conduct that constitutes obstruction of justice listed in application note 1 to § 3C1.1, the court did not err in increasing Pierce's offense level under that section.

### c. Base Offense Level

█ Pierce next contends that the district court erred by calculating his base offense level as if the offense involved more than 500 grams of cocaine base. He correctly points out that the cocaine in the package seized at the Tyler airport weighed only 493 grams. However, Pierce's argument is nullified by the commentary to Section 2D1.4 of the Sentencing Guidelines. Section 2D1.4 sets out the general rule that in calculating the base offense level for a defendant convicted of conspiracy, the offense level shall be the same as if the object of the conspiracy had been completed. Application Note 1 to the section provides that:

---

**4.** The government also argues that innocent persons whose services are unwittingly used may be considered in determining whether an organization is "otherwise extensive." Application Note 2 to § 3B1.1 provides that, in construing the term "otherwise extensive," "all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *See also United States v. Mejia-Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106

L.Ed.2d 602 (1989) (innocent or duped participants can be considered within "otherwise extensive"). Under this analysis, the district court could consider the unknowing services of American Airline employees and other carriers in determining whether the activity was otherwise extensive. In this case it was unnecessary for the court to rely on such reasoning. The evidence of the conspiracy's geographic scope, repeated shipments, and assistance from a network of supply and distribution contacts is sufficient to support the court's finding.

If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale.

U.S.S.G. § 2D1.4, comment (n. 1) Co-conspirator Hazel Crumpton testified that previous shipments had been made pursuant to the conspiracy, and that these other shipments were generally larger than the one intercepted on December 12, 1987. The district court properly sentenced Pierce according to the total amount of all the shipments involved in the conspiracy without being limited to the amount seized at the Tyler airport or alleged in the indictment. *See United States v. Sarasti*, 869 F.2d 805, 806–807 (5th Cir.1989).

██ The district court's findings about the quantity of drugs to be used in setting the base offense level are factual findings protected by the clearly erroneous rule. *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989). Application Note 2 to § 2D1.4 provides that where "there is no drug seizure ... the sentencing judge shall approximate the quantity of the controlled substance." In making such a determination the court may consider, among other things, "similar transactions in controlled substances by the defendant...." U.S.S.G. § 2D1.4, comment (n. 2). In this case, 493 grams were seized on December 12, 1987, and Hazel Crumpton testified that other, larger shipments had also been made. In light of such evidence, the court's finding that the conspiracy involved more than 500 grams was not clearly erroneous. Accordingly, the district court correctly calculated Pierce's base offense level using that amount.

#### d. Downward Departure

██ Pierce alleges that the district court erred in failing to depart downward from the sentence mandated by the guidelines. We will uphold a district court's failure to depart from the guidelines unless the refusal was in violation of law. *United*

*States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir.1989). Pierce does not suggest any law that has been violated by the failure to depart. Indeed, the gist of Pierce's claim is that the court gave him precisely the sentence required by law. "A claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no grounds for relief." *Id.* Accordingly, Pierce is not entitled to relief on this basis.

#### e. Unequal Sentences

██ Pierce's final contention is that he was treated differently by the sentencing judge than co-defendant Hazel Crumpton was. This argument provides no grounds for relief. Pierce does not argue that his sentence exceeded that mandated by the sentencing guidelines, and we have already determined that the court correctly applied the sentencing guidelines. Under such circumstances, a defendant cannot base a challenge to his sentence "solely on the lesser sentence given by the district court to his co-defendant." *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir.1989).

### B. EVANS

██ Evans challenges his conviction and sentence on several grounds. Among these he contends that his guilty plea was taken in violation of Rule 11, Fed.R. Crim.P., because the district court failed to inform him of the possible maximum and mandatory minimum penalty provided by law for his offense. Because we have determined that Evans's conviction must be reversed on this ground, we limit our analysis to this issue.

██ Rule 11 requires that before accepting a guilty plea the district court shall address the defendant in open court and inform him of, and determine that he understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law...." Fed.R.Crim.P. 11(c)(1). The government concedes that the district court wholly failed to comply with this provision. The government argues, however, that the court's failure was harmless error because

the indictment informed Evans of the minimum and maximum penalties. We disagree.

Rule 11(h), the harmless error provision of Rule 11, provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." However, we have previously held that a complete failure of the district court to address one or more of the core requirements of Rule 11 ordinarily requires reversal and will not be treated as harmless error. *United States v. Dayton*, 604 F.2d 931, 939 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Rule 11(h) does not change this analysis. *United States v. Bernal*, 861 F.2d 434, 437 (5th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989). In this case there has been a complete failure to address Rule 11's core requirement that the defendant be informed of and understand the direct consequences of his plea. *United States v. Dayton*, 604 F.2d at 939. The court's failure to address Evans in open court and inform him of the possible maximum and mandatory minimum sentence provided by law went to the heart of this requirement. *See id.* at 937; Fed.R.Crim.P. 11 Advisory Committee's Note to 1974 Amendments. This case stands alongside *United States v. Molina–Uribe*, 853 F.2d 1193, 1199–1200 (5th Cir.1988), in which we vacated a guilty plea because the trial court did not advise the defendant of the statutory special parole term, which like the mandatory minimum and maximum sentences, is specifically covered by Rule 11(c)(1). Accordingly, the harmless error analysis of Rule 11(h) does not apply in this case, and the district court's failure to comply with Rule 11(c)(1) requires that Evans's conviction be reversed.

### III.

### CONCLUSION

Having found no error with regard to Pierce, we affirm both his sentence and conviction. However, since Evans's guilty plea was accepted in violation of Rule 11, we must reverse his conviction and remand

to the district court to permit Evans to plead anew.

The judgment of the district court is, therefore AFFIRMED as to Pierce. As to Evans the judgment is REVERSED and REMANDED for further proceedings.