IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8057
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ANTHONY JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

(August 26, 1993)

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, GARZA, and DEMOSS, Circuit Judges.

WIENER, Circuit Judge:

We have taken this case en banc for the "housekeeping" purpose of deciding whether to complete the process we began two years ago with our en banc opinion in <u>United States v. Bachynsky</u>.[1] There, we eliminated the panel's per se reversal of the defendant's conviction for failure of the district court to make reference to or explain supervised release during the plea colloquy. We instead tested the effect of that omission by conducting a "harmless error" examination as authorized by Federal Rule of Criminal Procedure

_____

[1] 934 F.2d 1349 (5th Cir.) (en banc), <u>cert.</u> <u>denied</u>, 112 S.Ct. 402 (1991).

11's section (h), which was added to that Rule with the 1983 amendments. In so doing, however, we failed to repudiate our pre-amendment, jurisprudentially mandated taxonomy exercise of determining whether the plea colloquy error complained of should be categorized as a failure by the court to comply with one or more of the three "core concerns" of Rule 11,[2] and if so whether such failure was total or partial.

Today we acknowledge that in Bachynsky we went only halfway when we approved application of section (h)'s harmless error test to an imperfection in the plea colloquy, all the while continuing to embrace the pre-section (h) rubric of total or partial failures and core or non-core concerns. We now go the remaining "half the distance to the goal" of fully embracing section (h) by relegating that pre-amendment double dichotomy "into the dustbin of [the jurisprudential] history"[3] of this circuit, replacing it entirely with the pure harmless error examination that was intended by adoption of section (h).[4] Henceforth, no failure in the plea

---

[2] See United States v. Dayton, 604 F.2d 931, 939 (1979) ("Where each of Rule 11's core inquiries ["absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea"] has been reasonably implicated in the rule's required colloquy, we will examine its treatment to determine whether it has been sufficiently exposed to inquiry and determination.").

[3] Leon Trotsky (Lev Davidovich Bronstein), History of the Russian Revolution (1933), Vol. 3, Ch. 10; see also Augustin Burrill, Obiter Dicta (1884) "Carlyle" ("that great dust heap called `history.'").

[4] In so doing we join other circuits that have taken the same position. See e.g. United States v. Peden, 872 F.2d 1303, 1309 (7th Cir. 1989); United States v. Vance, 868 F.2d 1167, 1172 (10th Cir. 1989).

colloquy))regardless of whether it might be one of omission or commission, total or partial, core or non-core))will mandate an automatic reversal of a conviction and vacatur of a sentence. Rather, reversal and vacatur will be required when))but only when))the challenged "variance from the procedures required by [Rule 11] . . . affect[s] substantial rights" of the defendant.[5] In other words, when an appellant claims that a district court has failed to comply with Rule 11, we shall conduct a straightforward, two-question "harmless error" analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?

We shall conduct our review of each Rule 11 challenge solely on the basis of the record on appeal))principally the transcript of the plea colloquy hearing but also other portions of the record, such as any written plea agreement, the transcript of the sentencing hearing, and the sentence actually imposed.[6] When we review post-plea colloquy sources, however, we shall consider only such information contained therein as is temporally relevant to the

---

[5] FED. R. CRIM. P. 11(h).

[6] See Notes of Advisory Committee on Rules, 1983 Amendment, Rule 11(h). Unlike the position we take today, as taken previously by some other circuits (see n.4 supra), there are circuits that appear to restrict harmless error review to the plea hearing transcript. See e.g. United States v. Hourihan, 936 F.2d 508, 511 (11th Cir. 1991); United States v. Young, 927 F.2d 1060, 1062 (8th Cir.), cert. denied, 112 S.Ct. 384 (1991); United States v. Goldberg, 862 F.2d 101, 105 (6th Cir. 1988); United States v. Jaramillo-Suarez, 857 F.2d 1368, 1369-70 (9th Cir. 1988); United States v. Daniels, 821 F.2d 76, 80 (1st Cir. 1987).

voluntary and uncoerced nature of the defendant's guilty plea, and to his knowledge and understanding of the nature of the charges and the consequences of his plea.

Finally, overarching the rule and the review procedure we announce today is our solemn admonition that nothing in this opinion should be construed as condoning even the slightest diminution in the degree of diligence that the district courts of this circuit are expected to devote to complying fully with both the letter and the spirit of Rule 11 in every instance.

I

FACTS

Defendant-Appellant Michael Anthony Johnson pleaded guilty to one count of distribution of cocaine within 1,000 feet of a school playground, in violation of 21 U.S.C. §§ 841(a) and 860(a), and one count of unauthorized acquisition and possession of food stamps, in violation of 7 U.S.C. § 2024(b). During the Rule 11 plea colloquy,[7] the district court informed Johnson of the maximum statutory penalty and supervised release term,[8] but neglected to advise him that 21 U.S.C. § 860(a) carries a mandatory minimum penalty of one year imprisonment. Just before the district court accepted the plea, Johnson's attorney intervened to place his own

---

[7] See FED. R. CRIM. P. 11.

[8] The court stated: "The maximum possible punishment that can be assessed against a person convicted of that offense could be as many as 40 years of incarceration, followed by at least six years and up to 10 years of supervised release . . . ."

dialogue with Johnson on the record.[9]  After Johnson acknowledged that he had been informed by counsel that Johnson would be subject to a sentence enhancement under U.S.S.G. § 4B1.1 as a career offender, the following exchange took place:

> [Counsel]:  Okay.  And you understand that you're looking in the neighborhood of 262 to 327 months, which is 21 years to 27 years, under the Federal Sentencing Guidelines.  You understand that, do you not?
>
> Defendant Johnson:  Yes, Sir.
>
> [Counsel]:  And understanding that and my explaining to you two days ago or three days ago and then again))and then again today, do you still want to proceed with your plea?
>
> Defendant Johnson:  Yes, Sir.
>
> [Counsel]:  Okay.  You understand what you're looking at and you're going into this with your eyes wide open?
>
> Defendant Johnson:  Yes.

The district court accepted Johnson's plea.  After receipt of the Pre-Sentence Report (PSR), the court sentenced Johnson to 210 months imprisonment))over four years _less_ than the shortest term that he had acknowledged (when he entered his plea) he was expecting to receive.[10]  Johnson nevertheless appealed his sentence, arguing that the district court's failure to mention the mandatory minimum sentence of one year during the Rule 11 colloquy mandates vacatur, as such an omission could never be harmless error under

---

[9] Johnson is illiterate, and his attorney sought to make a thorough record of what he had explained to Johnson.

[10] 983 F.2d at 34.  A term of 210 months was at the bottom of the guideline range that was calculated in the PSR.  Johnson was also sentenced to six years supervised release, an aspect of his sentence not at issue here.

our precedent.[11]  The panel of this court that heard Johnson's appeal recognized that it was bound by <u>United States v. Martirosian</u>[12] and dutifully vacated Johnson's conviction and sentence, remanding the case to allow Johnson to plead anew.

II

ANALYSIS

A.  <u>Rule 11 and Our Interpretation</u>

Rule 11 of the Federal Rules of Criminal Procedure provides:

> **(c) Advice to Defendant.**  Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect or any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; . . .
>
> . . . .
> **(h) Harmless Error.**  Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

This court has long analyzed Rule 11 as addressing three "core concerns":  (1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3)

---

[11] <u>United States v. Martirosian</u>, 967 F.2d 1036, 1039 (5th Cir. 1992)(holding that "the failure to advise Martirosian of the minimum mandatory sentence was a complete failure to address a Rule 11 core concern, mandating that the plea be set aside").

[12] <u>Id.</u>

whether the defendant understands the consequences of his plea.[13]

Under our extant jurisprudence, a conviction on a plea of guilty is reversible ipso facto if, during the plea colloquy with the defendant, the trial court wholly or entirely "fail[s] to address one or more of the core requirements of Rule 11."[14] Thus, we have said that automatic reversal required two elements: (1) a total failure to address (2) a core concern. In contrast, when a trial court has addressed a core concern inadequately or in a "less than letter perfect manner," or when a non-core concern was left totally unaddressed, we have reviewed the plea colloquy "under the harmless error standard of Rule 11(h) to determine whether the court's imperfection affected substantial rights of the defendant."[15]

Until now, however, upon finding that a district court had made an error in a Rule 11 colloquy, our initial inquiry was: Are we faced with a total failure to address a core concern, which will mandate vacatur, or only with some lesser error or omission, which we review for harmless error under section (h) of Rule 11? In Bachynsky, for instance, the district court "informed [the defendant] of the nature of the charges against him; stated the elements of each of the crimes to which he was pleading guilty; stated the maximum statutory penalty for each crime to which he was

---

[13] Bachynsky, 934 F.2d at 1354; United States v. Bernal, 861 F.2d 434, 436 (5th Cir. 1988), cert. denied, 493 U.S. 872, 110 S.Ct. 203 (1989); United States v. Dayton, 604 F.2d 931, 939 (5th Cir. 1979)(en banc), cert. denied, 445 U.S. 904 (1980).

[14] United States v. Pierce, 893 F.2d 669, 679 (5th Cir. 1990).

[15] Bachynsky, 934 F.2d at 1354.

pleading guilty; and then asked if he understood the elements and penalties associated with each count."  The trial court, however, neglected "personally [to] advise Dr. Bachynsky that his sentence could or would include a period of supervised release, or explain to Dr. Bachynsky the effect of supervised release."[16]  That error was reviewed for harmlessness, as the imperfection involved "only one component [supervised release] of one element [the maximum penalty for which the defendant was liable] of one core concern [whether the defendant understands the consequences of his plea]."[17]

Despite the implication in Bachynsky that, except for a total failure to address one of the three nominate core concerns of Rule 11, we would test all Rule 11 errors for harmlessness, panels of this court have continued in the ensuing two years to take the per se approach even as to partial failures or errors not affecting entire core concerns.  For example, in Martirosian the panel held that a failure to mention the mandatory minimum sentence "'went to the heart of'"[18] the third "core concern"))i.e., whether the defendant knew the consequences of his plea))and as such, constituted "a complete failure to address a Rule 11 concern, mandating that a plea be set aside."[19]  In the instant case, the

_____

[16] Id. at 1353.

[17] Id. at 1355.

[18] 967 F.2d at 1039 (quoting Pierce, 893 F.2d at 679 and discussing the 1974 amendments to FED. R. CRIM. P. 11).

[19] Id.

8

district court, like the one in <u>Martirosian</u>, did not inform Johnson of the statutory minimum sentence that had to be imposed. The <u>Johnson</u> panel was therefore bound by stare decisis to follow <u>Martirosian</u>'s interpretation of Rule 11 vis-à-vis mandatory minimum sentences and set aside Johnson's guilty plea without ever reaching the question of harmless error. But in so doing, the members of the <u>Johnson</u> panel implied, "loud and clear," just how they felt in playing "Simon says" with a district court that neglected to mention a twelve month mandatory minimum to a defendant who acknowledged during the plea colloquy that he was facing a term of incarceration more than <u>twenty times</u> the mandatory minimum! That message was not lost on the other active judges of this court; we voted to consider <u>Johnson</u> en banc.

B. <u>Our "Core Concern" Analysis and the 1983 Amendment to Rule 11</u>

In its en banc brief, the government argued that our current framework of "complete failure/partial failure" of a "core concern"))under which <u>only</u> errors deemed "partial failures" or errors that do not "go to the heart of a core concern" are reviewed for harmless error under Rule 11(h))finds support in neither Rule 11(h)'s text nor the accompanying advisory committee notes. As we today review a district court error that has been held to "go to the heart of a core concern" (i.e., a total failure to address a core concern), we are positioned to conduct a retrospective examination of the phylogeny of our automatic reversal rule.[20] When we thus reflect upon this bit of Fifth Circuit history, we cannot

---

[20] <u>See</u> <u>Bachynsky</u>, 934 F.2d at 1358.

9

9

help but agree with the government and proceed to discard our automatic reversal analysis for the anachronism that it is))and that it has been for a decade.

Section (h), which was added to Rule 11 by Congress in 1983, provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."[21] Nevertheless, our continued reliance on the "core concern" analysis effectively preserved a privileged "teflon" class of variances))total failures to address core concerns))that remained exempt from any harmless error analysis. So, despite the advent of section(h), these sacred cows of the plea colloquy survived and continued to produce automatic vacatur. That approach arose in pre-1983 cases[22] and, we recognize today, should have been supplanted by the 1983 addition of section (h) to Rule 11.

The advisory committee notes on section 11(h) make clear that "the harmless error rule of Rule 52(a) is applicable to Rule 11." Unmodified, that statement means fully applicable. According to the committee notes, section (h) was added to Rule 11 in response to the continuation by several courts to follow McCarthy v. United States[23] even after post-McCarthy amendments to Rule 11. Those courts had declined to apply harmless error analyses to most if not all Rule 11 errors. In McCarthy, which involved an appeal from a

---

[21] (Emphasis added).

[22] See McCarthy v. United States, 394 U.S. 459, 471-72(1969); Dayton, 604 F.2d at 939-40.

[23] 394 U.S. 459 (1969).

10

guilty plea that was accepted following a plea hearing which was

flawed under Rule 11, the Supreme Court held

> that prejudice inheres in a failure to comply with Rule
> 11, for noncompliance deprives the defendant of the
> Rule's procedural safeguards that are designed to
> facilitate a more accurate determination of the
> voluntariness of his plea. Our holding [is] that a
> defendant whose plea has been accepted in violation of
> Rule 11 should be afforded the opportunity to plead anew
> . . . .[24]

Concerning McCarthy's holding that any violation of Rule 11 created

reversible error, the advisory notes accompanying the 1983

amendment asserted that "[t]hough the McCarthy per se rule may have

been justified at the time and in the circumstances which obtained

when the plea in that case was taken, this is no longer the case."

The committee cited the expansions and modifications to Rule 11

that had occurred since McCarthy, and expressed its belief that

McCarthy, which involved a direct appeal, was actually directed at

habeas cases in order to justify the amendment to Rule 11, under

which all district court mistakes would be reviewed for harmless

error.

With the benefit of hindsight, we now see that this circuit's

approach has had the effect of setting aside certain types of

error))i.e., violations of "core concerns"))and retaining a "per se

reversible error" rule as to those mistakes, while applying the new

harmless error approach to others. Although we cast no aspersions

on our own retention of the pre-1983 vestige of the rule,[25] we inter

---

[24] Id. at 471-72.

[25] It is difficult to imagine a situation in which the trial
court would neglect entirely to mention one of what were formerly

11

it now in favor of the more straight-forward approach of universal application of Rule 11(h) harmless error analysis to review all complaints of Rule 11 violation in which we find that an error was made. Henceforth, if a mistake is made by the district court during the Rule 11 colloquy, it shall be reviewed for harmless error regardless of whether, under our prior system, the error or omission would have been classified as either total or partial, or would have been found to implicate either a core or non-core concern.

C. Application of Harmless Error

We cannot over-emphasize that the application of the harmless error analysis to all errors made in Rule 11 colloquy cannot be viewed as in any way "nullifying important Rule 11 safeguards."[26] In fact, the advisory committee notes stress that the "kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited."[27] Even a casual review of the voluminous jurisprudence on point, produced by the several circuits during the decade since the adoption of Rule 11(h), demonstrates beyond peradventure that the admonition to scrutinize errors made during Rule 11 colloquies closely has indeed

_____

our "core concerns" and, in so doing, not "affect substantial rights." Nevertheless, we give our prior analysis a ceremonious "heave ho." Cf. Harper v. Virginia Dep't of Taxation, 61 U.S.L.W. 4664, 4670 (June 18, 1993)(Scalia, J., concurring).

[26] FED. R. CRIM. P. 11 (advisory committee notes to 1983 amendment).

[27] Id.; see Twenty-Second Annual Review of Criminal Procedure, 81 GEO. L.J. 853, 1205 & n. 1398 (1993).

been taken to heart.

To determine whether a Rule 11 error is harmless (i.e., whether the error affects substantial rights), we focus on whether his knowledge and comprehension of the full and correct information would have been likely to affect the defendant's willingness to plead guilty.  Stated another way, we "examine the facts and circumstances of the . . . case to see if the district court's flawed compliance with . . . Rule 11 . . . may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty."[28]

In making this determination, we must bear in mind that the issue "'must be resolved solely on the basis of the Rule 11 transcript' and the other portions (e.g., sentencing hearing) of the limited record made in such cases."[29]  So, even though we are free to examine the entire record on appeal, including documentation that itself post-dates the plea hearing (such as the pre-sentence investigation report, objections thereto by the defendant, and the transcript of the sentencing hearing), we will consider only those temporally relevant matters that are revealed in the record.  We shall not, for example, remand for further factual findings on the issue of harmlessness.  If information known to or about the defendant, and his knowledge and

---

[28] Bachynsky, 934 F.2d at 1360 (citing United States v. Reyez-Ruiz, 868 F.2d 698, 703 (5th Cir. 1989)).

[29] FED. R. CRIM. P. 11 (advisory committee notes to 1983 amendment) (emphasis added) (quoting United States v. Coronado, 554 F.2d 166, 170 n.5 (5th Cir. 1977)).

13

understanding, is not revealed by the record on appeal, such information will not be factored in to our harmless error calculus.

In our review of the record to search for data that might counteract a deficiency in a plea colloquy sufficiently to negate harm, we shall not lose sight of the importance that Rule 11 places on the role of the district court. In designating the district judge as the one who must conduct the colloquy with the defendant and determine that the requirements for accepting a plea exist, Rule 11 recognizes the significance of the judge's imprimatur on these proceedings. Therefore, before we accept other persons or proceedings in substitution for the judge as the source of information that must be known by or about the defendant, we shall endeavor to ascertain that such alternate sources are clothed with indicia of dignity, solemnity, and reliability sufficient to the purposes of the rule.

When we apply these principles to the instant case, it is absolutely clear that Johnson understood that he was facing a sentencing range the low end of which was substantially greater than the one year mandatory minimum. In his attorney's words, Johnson was "going into this with [his] eyes wide open." As recited above, the record demonstrates that Johnson understood that the least incarceration he was likely to receive under the guidelines was 21 years. Simply put, when a defendant is willing to accept a plea bargain and enter a guilty plea with the understanding that such plea is certain to produce a prison sentence of not less than 21 years, there is no reasonable

14

probability that his possession of the additional knowledge that there happens to be a one-year mandatory minimum penalty associated with one of the crimes to which he is pleading could have affected his decision thus to plead guilty.[30]  This is the kind of common sense, logical analysis that hereafter we shall bring to bear in reviewing Rule 11 errors for harmlessness.

Today we deal specifically with a mandatory minimum sentence; in Bachynsky, it was supervised release.  But the nature of the particular error or the particular facet of the plea colloquy under consideration is immaterial))it could just as easily be fines, restitution, statutory maximums, sentence enhancement, promises and forbearances, rights waived, coercion, or any other matter about which a defendant is supposed to be informed and comprehend in

---

[30] We stress that the determination of harmless error in these cases is a fact sensitive inquiry, so our finding harmless error under today's facts could well mean very little in the next case involving an erroneously omitted mandatory minimum sentence. For instance, in Martirosian, the trial court did not inform the defendant of a mandatory minimum of five years under 21 U.S.C. § 841(b)(1)(B).  It is not clear from the opinion what guideline range Martirosian was looking at when he pleaded guilty, but he received a sentence of 114 months (9½ years), which included a "two-level upward adjustment for obstruction of justice" for activity that occurred after the plea was taken.  Martirosian, 967 F.2d at 1038.  When, in a case such as Martirosian, a mandatory minimum sentence is almost as large as the sentencing guideline range, knowledge of that minimum may well be found necessary for the defendant to understand his situation fully. The failure to inform the defendant of such a mandatory minimum sentence is thus much more likely to "affect substantial rights." See also Bachynsky, 934 F.2d at 1361 (finding the omission of a mandatory term of supervised release from a Rule 11 colloquy to be harmless error, we stated nevertheless that "under significantly less imposing facts and circumstances, we might well find that a district court's failure to explain supervised release does affect substantial interests of a defendant and thus is not harmless error").

order to plead guilty validly.

## III

## CONCLUSION

We no longer recognize the existence of any category of error in the Rule 11 proceeding that will mandate <u>automatic</u> reversal. To the extent that any of our prior holdings are inconsistent with the rule we here espouse, they are overruled.[31] Henceforth, all Rule 11 errors or omissions shall be tested under the provisions of section (h) in the manner discussed above. In so holding, we stress that "[section] (h) makes <u>no change</u> in the responsibilities of the judge at Rule 11 proceedings, but instead merely rejects the extreme sanction of automatic reversal."[32]

In the instant case, the district court's variance from the procedures set forth in Rule 11, i.e., its failure to inform Johnson of a mandatory one-year period of incarceration, could not reasonably be deemed to have affected Johnson's substantial interests when viewed in light of all that Johnson knew and understood about the probable length of his impending sentence. It is clear from the record that there is simply no way that his

---

[31] These include, without limitation, those per se plea vacatur opinions rendered since our en banc opinion in <u>United States v. Bachynsky</u>, 934 F.2d at 1349, e.g., <u>United States v. Martirosian</u>, 957 F.2d at 1036 (failure to mention mandatory minimum sentence); <u>United States v. Pierce</u>, No. 92-4232 (5th Cir. Dec. 29, 1992) (unpublished) (failure to mention enhancement); and <u>United States v. Whyte</u>, No. 92-4150 (5th Cir. Dec. 30, 1992) (unpublished) (understatement of term of mandatory minimum sentence).

[32] FED. R. CRIM. P. 11 (advisory committee notes to the 1983 amendment).

16

failure to hear, from the judge's lips, that he (Johnson) was subject to a one-year mandatory minimum period of imprisonment could have possibly affected his decision to plead guilty. Johnson's conviction is therefore

AFFIRMED.