EMILIO M. GARZA, Circuit Judge,
dissenting:
I agree with most of the majority’s opinion. I must dissent, however, from Part II.A.1, in which the majority states that the warrantless search of the cardboard box was permissible under the private search doctrine. Our case law indicates that the private search doctrine is a more narrow exception than what the majority holds. Although I dissent on this issue, I have reservations whether the cardboard box should be excluded from trial. This case cries out for an exception to exclusionary rule so that police errors of this type do not serve as an absolute bar. A brief recitation of the facts is necessary to fully explain my conclusion.
Prior to Oliver’s arrest, his co-conspirator, Henson, had confessed to officers about evidence used in the crime. Specifically, Henson discussed a laptop computer and a box of documents that Oliver had moved into Armstrong’s apartment. Henson did not know Armstrong’s address, but he gave officers directions to her home along with an accurate description of her apartment building. When agents arrested Oliver near his home they returned to Oliver’s house, with his consent, and questioned him. Oliver confessed and gave a detailed explanation of the scheme. Oliver admitted to using a laptop, but told agents he had tossed the computer into a lake. A few days later, the agents went to Armstrong’s apartment and interviewed her. Unbeknownst to the agents, Armstrong had previously inspected the contents of Oliver’s cardboard box and she had attempted to access the laptop’s files.
Armstrong never informed the agents about her search. Instead, when agents inquired whether Oliver had left behind belongings, Armstrong pointed to a cardboard box in her dining room. She told the agents they could have it and the agents picked it up. Armstrong then led the agents to a bedroom where a laptop sat. Armstrong handed the laptop to the agents. Later, the agents obtained a search warrant so they could review the laptop’s files. They did not obtain a search warrant for the cardboard box because the agents thought they needed “a *417 search warrant for a computer, not for a box of records.”
The majority holds that this search was valid under the private search doctrine. In the majority’s view, when a private individual examines a closed container’s contents, a subsequent warrantless search by government officials does not violate the Fourth Amendment if the two searches are congruent in scope. Under this analysis, no consideration is given to an officer’s knowledge of the private individual’s earlier search. This interpretation, however, is much broader than the limits reached by our case law. We have held that in cases where police view evidence after a private citizen notifies officers about his search, the police’s acts “ ‘do not constitute a “search” within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search.’ ” Runyan, 275 F.3d at 458 (quoting United States v. Bomengo, 580 F.2d 173, 175 (5th Cir.1978)). But, we have never applied this holding to a case in which a private citizen searches a closed container but fails to share his knowledge with police.
The requirement of a private individual sharing information with police is supported by the Court’s holding in Jacobsen. 466 U.S. at 120 n. 17, 104 S.Ct. 1652. In that case, Justice Stevens stated that the defendant’s reasonable expectation of privacy had evaporated because “the Federal Express employees who were lawfully in possession of the package invited the agent to examine its contents; the governmental conduct was made possible only because private parties had compromised the integrity of this container.” Id. Key to Justice Stevens’s consideration was the sequence of events: a private search followed by an individual’s disclosure of information to police. Id. at 119-20, 104 S.Ct. 1652. Thus, under Jacobsen, the private search doctrine applies only when a private search is followed by an individual’s disclosures to police about that search. Id.', see also 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.8 (4th ed.2004). Runyan offers further support for this interpretation. In that case, we stated that “Jacobsen directs courts to inquire whether the government learned something from the police search that it could not have learned from the private searcher’s testimony and if so, whether the defendant had a legitimate expectation of privacy in that information.” 275 F.3d at 461 (citing Jacobsen, 466 U.S. at 118-20, 104 S.Ct. 1652) (emphasis added). In Runyan, we emphasized throughout that we must consider whether the government had “knowledge” of a container’s contents based on the citizen’s statements, recollections, or description before we could answer whether the government’s search exceeded a private search’s scope. 275 F.3d at 463-64.
The majority relies on Runyan and Jacobsen to conclude that once an individual searches a defendant’s closed container, “his reasonable expectation of privacy evaporates.” In my reading of those cases, that is an incomplete representation of the holdings.[1] Runyan and Jacobsen *418 weighed whether police exceeded the scope of a private search when citizens had explicitly informed officers about an earlier search. Neither case can truly be used to support the majority’s view of the private search doctrine in this case. In a footnote, the majority responds that our prior private search doctrine cases have not expressly required the sharing of information with police. This is inaccurate. In Runyan, we repeatedly stated that application of the private search doctrine depends on the police’s “confirmation of prior knowledge” of a private citizen’s search. 275 F.3d at 463. Runyan emphasized that the permissible scope of an officer’s search turns on the officer’s certainty of what was inside a closed container. That certainty can be established from “the statements of the private searchers, [officers’] replication of the private search, and [officers’] expertise.” Id. Runyan specifically required a court to consider what knowledge private citizens shared with police. Here, agents could not confirm Armstrong’s knowledge because they were unaware of her earlier search.
The majority also relies on our discussion in Paige about a defendant’s reasonable expectation of privacy[2] to conclude that “it is the private search itself, and not the authorities’ learning of such search, that renders a police officer’s subsequent warrantless search permissible.” Paige, however, involved the search of a defendant’s garage by a private citizen, the results of which were immediately communicated to police before the government conducted a warrantless search. 136 F.3d at 1015-16. In Paige, our discussion specifically focused on foreseeability and an individual’s expectation of privacy as it relates to the search of his home — a space that warrants special consideration under the Fourth Amendment. Id. at 1020-21. Based on this critical fact, we narrowly confined Paige’s Fourth Amendment inquiry to “a police search of a home that extends no further than a previously-conducted private party search.” Id. at 1020. And, we specifically declined to extend Jacobsen or the private search doctrine to the facts of Paige. Id. at 1020 n. 11.
Nonetheless, while I disagree with the majority’s treatment of the private search doctrine, I have serious misgivings whether the contents of the cardboard box should be suppressed. Under our current precedent, we have little choice but to reflexively apply the exclusionary rule unless an exception exists. And, we are prevented from weighing whether the exclusion of evidence would truly deter future *419 police misconduct.[3] I have serious doubts, however, whether that approach is correct.
Suppression of relevant, otherwise admissible evidence should always be “our last resort, not our first impulse.” Hudson v. Mich., 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Accordingly, the Supreme Court has long rejected the “reflexive application” of the exclusionary rule wherever a Fourth Amendment violation has occurred. Ariz. v. Evans, 514 U.S. 1, 13, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). The exclusionary rule is a prudential measure that applies “only where its deterrence benefits outweigh its ‘substantial social costs.’ ” Pa. Bd. of Prob. and Parole v. Scott, 524 U.S. 357, 363,118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (quoting United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Although this case does not fall squarely within any of the established “exceptions” to the exclusionary rule, its peculiar facts present an instance where application of the rule seems particularly difficult to justify.
As the Court noted in Herring v. United States, the exclusionary rule applies only when it will result in the appreciable deterrence of deliberate, reckless, or grossly negligent police misconduct. 555 U.S. 135, 129 S.Ct. 695, 700, 702, 172 L.Ed.2d 496 (2009). But police malfeasance does not exist here. When agents arrived at Armstrong’s apartment they were not blindly searching for items that could link Oliver to the crime. Thanks to Henson’s and Oliver’s confessions, agents went to Armstrong’s home with knowledge of what was inside the cardboard box — a notebook, credit and identification cards, and documents related to the fraud. When the agents thought they needed a search warrant for the laptop they obtained one immediately. When the agents failed to obtain a warrant to examine the box’s contents — apparently because they misunderstood the law — they made a mistake that could have been avoided because they had probable cause to acquire a search warrant due to Henson’s confession. The applicability of the exclusionary rule, however, does not depend on the wrongness of their judgment, but “the efficacy of the rule in deterring Fourth Amendment violations in the future.” Herring, 129 S.Ct. at 700. Given that there is no evidence of malice here, as agents could have easily obtained a search warrant, I do not see how the interests of deterrence are served by excluding the cardboard box’s contents.
Of course, law enforcement will always be better off obtaining a warrant in cases such as this. But suppression of evidence is not constitutionally commanded for failure to do so. See Evans, 514 U.S. at 10, 115 S.Ct. 1185. Every application of the exclusionary rule exacts an extraordinary cost on “truth-seeking and law enforcement objectives.” Herring, 129 S.Ct. at 701 (quoting Scott, 524 U.S. at 368, 118 S.Ct. 2014). Before applying the rule, courts must consider whether “the benefits of deterrence ... outweigh the costs.” Id. (citing Leon, at 910, 104 S.Ct. 3405). Here, the unconstitutional search resulted from an error in the agents’ judgment, *420 which in my view does not amount to misconduct. Although I disagree that the private search doctrine applies to this case, I would not apply the exclusionary rule to the facts of this ease either. Unfortunately, I know of no case law or authority that would allow me to affirm the district court’s judgment.
For the reasons stated above, I would REVERSE the district court’s motion to suppress judgment and I would REMAND for further proceedings.[4]

. This interpretation is also contradicted by a number of other private search cases from this circuit in which we have upheld warrant-less searches by the government. From these cases, a pattern emerges. First, a private citizen inspected an item for which there was a reasonable expectation of privacy. Then, the individual shared his knowledge with police. And, only then, did police conduct a constitutionally permissible warrantless search. This pattern indicates that the privacy right disappears only after the private citizen shares his knowledge with police. See Bomengo, 580 F.2d at 175-76 (apartment staff entered defendant’s apartment, found guns in closet, and notified police who searched clos *418 et and seized guns); United States v. Pierce, 893 F.2d 669, 673-74 (5th Cir.1990) (airline employees opened suspicious package and notified police about contents before officers searched package); United States v. Grimes, 244 F.3d 375, 383 (5th Cir.2001) (computer repair technician viewed child pornography on defendant's computer and told police who viewed previously found images); United States v. Parks, 119 Fed.Appx. 593, 598-99 (5th Cir. Dec.2004) (unpublished) (upholding warrantless search under private search doctrine after Federal Express employees opened package, discovered drugs, and informed police).

. Neither party has briefed whether Oliver had a reasonable expectation of privacy in the cardboard box he left at Armstrong’s house. The district court assumed such an expectation existed. The majority concludes that Oliver’s privacy right disappeared because he left the box at Armstrong's apartment "for several days without notifying or otherwise communicating his whereabouts to Armstrong.” But, we do not know whether Oliver actually chose to leave the box unattended because agents located the box several days after they had arrested Oliver and placed him in federal custody.

. See Runyan, 275 F.3d at 466 (“The exclusionary rule prohibits introduction at trial of evidence obtained as the result of an illegal search or seizure. The rule excludes not only the illegally obtained evidence itself, but also other incriminating evidence derived from that primary evidence .... [T]his court [has] outlined [] three primary exceptions to the exclusionary rule. Evidence will be admissible despite the exclusionary rule if: (1) it 'derives from an independent source,' (2) it 'has an attenuated link to the illegally secured evidence,’ or (3) it 'inevitably would have been discovered during police investigation without the aid of the illegally obtained evidence.' ") (internal citations omitted).

. Under the terms of Oliver’s conditional plea agreement, he is permitted to withdraw his guilty plea if he successfully appeals the denial of his suppression motion. The government, however, may prosecute any charges against him as to which the statute of limitations had not expired as of the filing of the indictment.