## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### No. 91-4097
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**ROY LEE PIERCE,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(April 21, 1992)

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

The pivotal issues in this appeal from denial of § 2255 relief are the scope of such proceedings, and Roy Lee Pierce's ineffective assistance of counsel claim concerning a search purportedly violative of the Fourth Amendment, but which Pierce lacks standing to challenge. We **AFFIRM**.

## I.

At the Los Angeles American Airlines terminal in December 1987, Pierce's sister-in-law, Angela Evans, picked up a package sent from Tyler, Texas. Shortly thereafter, she presented a package to American Airlines employee McAdam for shipment to Tyler. In response to his inquiry, Evans stated that it contained an

iron.[1]  She filled out an invoice, listing Amy Long as the shipper and Hazel Crumpton as the recipient.  Evans informed McAdam that she was shipping the package for a friend; but Evans, not Amy Long, was the sender.

After Evans left, McAdam became suspicious, because the package was too light to contain an iron; his resulting x-ray revealed an opaque mass instead.  McAdam contacted his supervisor; and, pursuant to airline policy, they opened the package and discovered what later proved to be rock cocaine.[2]  McAdam's supervisor then contacted the DEA office at the airport, which arranged a controlled delivery, forwarding the package to its intended destination and establishing surveillance there.  The next day, at the Tyler airport, Crumpton was arrested after she picked up the package.  Pierce had been observed driving her to the airport and was waiting in the car.  He was arrested as he attempted to escape.

In January 1988, Pierce, Crumpton, Angela Evans, and her husband, James Evans, were indicted for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; Pierce and Crumpton, also for possession of cocaine, in violation of 21 U.S.C. § 841(a)(1).  Pierce moved to suppress the cocaine found in the package,

---

[1]    The facts underlying this court's affirmance on direct appeal are found in **United States v. Pierce**, 893 F.2d 669 (5th Cir. 1990).

[2]    McAdam testified that an opaque mass could mean a flammable liquid, presenting a danger to the aircraft; and that, in such an instance, airline policy allowed his supervisor to open the package.

asserting that the search violated the Fourth Amendment. A supplement contended that he had "derivative standing to object to the search" because the results would be used against him. The district court, without addressing standing, denied the motion.

Crumpton and the Evanses pleaded guilty during trial in July 1988; Angela Evans and Crumpton testified. The jury found Pierce guilty on both counts; his sentence included 262 months' imprisonment. He appealed, including contending that the Los Angeles search violated the Fourth Amendment. The government countered that Pierce lacked standing to contest it. In *United States v. Pierce*, 893 F.2d 669 (5th Cir. 1990), this court affirmed, holding, *inter alia*, that the Fourth Amendment had not been violated and, accordingly, declining to address standing. *Id.* at 674 n.2.

In May 1990, Pierce moved under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, asserting 24 grounds for relief, the majority of which were ineffective assistance of counsel claims. The government's response included the standing challenge. Without addressing standing, the magistrate judge, in a most thorough and well-reasoned report, recommended denial; and the

district court adopted the recommendation.[3]   Pierce timely appealed.[4]

## II.

Pierce limits the issues to the following:  he was denied, on several grounds, his Sixth Amendment right to effective assistance of counsel; the government knowingly used perjured testimony and misled the jury about benefits his co-conspirators would receive for cooperating with the government; and the government's attorney committed perjury in denying production of alleged Jencks Act material to Pierce.[5]

---

[3]   The report, filed on October 18, stated that any written objections were to be filed within 10 days after its receipt.  It was received at Pierce's prison on October 25, but not provided to him until November 15.  His written objections, allegedly mailed on November 27, were filed on December 3.  Three days before they were filed, the district court adopted the report and entered judgment. In mid-December, Pierce moved the district court to consider the objections (maintaining that they were timely) and attached the previously filed "unsworn declaration of statement" of Angela Evans.  Although the district court stated that the objections were not timely, it ruled that the objections were without merit.

Pierce contends that his objections were timely, and that the district court erred in failing to consider them, including Evans' written statement.  If objections are untimely, an aggrieved party is not entitled to *de novo* review of the magistrate judge's findings and recommendations, and appellate review of findings accepted or adopted by the district court is only for plain error or manifest injustice.  *E.g.*, **Rodriguez v. Bowen**, 857 F.2d 275, 276-77 (5th Cir. 1988).  The record reflects, however, that the district court considered the objections; we treat them as timely.

[4]   After Pierce, *pro se*, filed affirmative and reply briefs, counsel was appointed, filed a supplemental brief, and participated in oral argument.

[5]   Pierce has narrowed the 24 issues in the § 2255 application to 14 here.  Of course, issues presented in the application, but not pursued on appeal, have been abandoned.  *E.g.*, **Barrientos v. United States**, 668 F.2d 838, 840 n.1 (5th Cir. 1982).

- 4 -

For a collateral attack under § 2255, "a distinction is drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). *See* *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).[6] This is because, "[a]fter conviction and exhaustion or waiver of any right to appeal, `we are entitled to presume that [the defendant] stands

---

Along that line, Pierce stated in his *pro se* affirmative brief that, "[o]n appeal, petitioner abandons the [government's] suborning perjury from American Airlines employees allegation", raised in the application. (Emphasis by Pierce.) In a *pro se* motion subsequent to all briefs being filed, however, Pierce claims that he did not intend to abandon the issue, maintaining that "[a]s a pro se litigant [he was] not cogniz[ant of] the legal implication of using the term abandons." (Emphasis by Pierce.) His appointed counsel advised, without briefing, that he did not object to the issue being considered. This issue has been abandoned. In any event, "[t]he `contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on' must be included in the appellant's brief." *United States v. Abroms*, 947 F.2d 1241, 1250 (5th Cir. 1991) (quoting Fed. R. App. P. 28(a)(4)), *petition for cert. filed*, (U.S. Feb. 20, 1992) (No. 91-1418). Pierce has failed to comply; accordingly, "[i]t `would be patently unfair to the [government] for this court to consider this issue as properly before it.'" *Id.* (bracket in *Abroms*) (quoting *Cannon v. Teamsters & Chauffeurs Union*, 657 F.2d 173, 178 (7th Cir. 1981)).

[6]     Section 2255 provides in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

fairly and finally convicted.'" *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)), *cert. denied*, __ U.S. __, 112 S. Ct. 978 (1992). Accordingly, "[a] defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both `cause' for his procedural default, and `actual prejudice' resulting from the error." *Id.* at 232 (citations omitted). "This cause and actual prejudice standard presents `a significantly higher hurdle' than the `plain error' standard that we apply on direct appeal." *Id.* (quoting *Frady*, 456 U.S. at 166). Other types of error may not be raised in a collateral attack, unless the defendant demonstrates that "the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." *Id.* at 232 n.7. *See also* *Capua*, 656 F.2d at 1037.[7]

## A.

Pierce's ineffective assistance of counsel claims are obviously of constitutional magnitude and satisfy the cause and actual prejudice standard. "Ineffective assistance of counsel ... is cause for a procedural default." *Murray v. Carrier*, 477 U.S.

---

[7] For an excellent discussion of this subject, including the government being required to raise the procedural bar in district court in order to invoke it on appeal, see *United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992). Concerning Pierce, the government raised the bar in the § 2255 district court proceeding and here.

478, 488 (1986). "[I]f [a] procedural default is the result of ineffective assistance of counsel, the Sixth Amendment ... requires that responsibility for the default be imputed to the [government], which may not `conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). Moreover, "`[t]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations.'" *United States v. Munoz-Romo*, 947 F.2d 170, 179 (5th Cir. 1991) (quoting *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988)). Except in those rare instances where an adequate record exists to evaluate such a claim on direct appeal, this court generally declines to address it, without prejudice to it being raised under § 2255. *E.g.*, *id.*

Pierce maintains that his counsel was ineffective because first, he failed to present, on direct appeal, a "controlling" Fifth Circuit case concerning whether the airline employees were acting as agents or instruments of the government, thereby violating the Fourth Amendment by searching the package, and, instead, relied on a Ninth Circuit standard; second, he failed to investigate before trial, or present on appeal, whether the airline search was required by federal regulations, thereby constituting federal action for purposes of determining whether the search was

conducted by a private party or by an agent or instrument of the government; third, he failed to object, move for a mistrial, or request limiting instructions when Pierce's co-conspirators' plea agreements were introduced at trial; and fourth, he refused both to cross-examine Angela Evans on whether the package (with money) she received from Pierce -- before she sent the package (with cocaine) addressed to Crumpton -- had been opened prior to receipt and to question Pierce at the suppression hearing on this subject. "To succeed on any claim of ineffective assistance of counsel, a defendant must show that: (1) the attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that except for the attorney's unprofessional errors, the results of the proceeding would have been different." *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). An insufficient showing of prejudice pretermits addressing the adequacy prong. *E.g.*, *United States v. Fuller*, 769 F.2d 1095, 1097 (5th Cir. 1985).

## 1.

The first two ineffective assistance contentions relate to Pierce's claim that the search in Los Angeles was by instruments or agents of the government and violated his Fourth Amendment rights.[8] The government maintains that he lacks standing to challenge this

---

[8] This claim possibly brings *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), into play and was the primary reason for our hearing oral argument. Our resolution of the standing issue, however, moots the claim.

search.  Pierce responds, as he did in the § 2255 district court proceeding, that the government has waived its right to contest standing, because it did not do so in the trial court.[9]  ***Steagald v. United States***, 451 U.S. 204, 209 (1981), holds that the government "may lose its right" to raise Fourth Amendment standing on appeal "when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation."

***Steagald*** involved the government's first-time assertion, after grant of certiorari, that a defendant lacked standing to object to the search of another's house.  The Court noted that, in the district court and this court, the government had failed to challenge facts from which the defendant's standing could reasonably have been inferred.  In fact, it "ha[d] directly sought to connect [the defendant] with the house, ha[d] acquiesced in statements by the [trial and appeals] courts ... characterizing the search as one of [the defendant's] residence, and ha[d] made similar concessions of its own."  451 U.S. at 210.  On appeal, the government "never sought to correct" the district court's characterizations of the defendant's Fourth Amendment claim, and, in fact, "in its opposition to certiorari expressly represented that the searched home was [the defendant's] residence."  ***Id.*** at

---

[9]    Pierce also contends that, on direct appeal, this court found standing, by implication, when it addressed his Fourth Amendment claim.  As noted, this court stated, instead, that it was not necessary to reach standing.  893 F.2d at 674 n.2.

209-10.  Through its "assertions, concessions, and acquiescence", the government lost its right to challenge standing.  *Id.* at 211. *Cf. United States v. Amuny*, 767 F.2d 1113, 1121-22, 1121 n.5 (5th Cir. 1985) (government forfeited opportunity to challenge standing on appeal where it not only failed to raise the issue in district court, but expressly conceded standing, thereby inducing the defendants to forego an opportunity to establish it).[10]

In this case, there is no conduct by the government, similar to that in *Steagald* or *Amuny*, such as taking earlier contrary positions or engaging in deliberate strategy shifts.  Nor is this the first time that standing has been raised.  As noted, and as discussed below, Pierce asserted prior to the suppression hearing that he had standing, but never offered facts from which it might reasonably have been inferred.  Thereafter, the government consistently contested standing -- on direct appeal, in the § 2255 proceeding in district court, and on this appeal.  It is not barred from doing so.

A defendant bears the burden of establishing standing to challenge a search under the Fourth Amendment -- that he has "a privacy or property interest in the premises searched or the items seized which is sufficient to justify a `reasonable expectation of privacy' therein." *United States v. Judd*, 889 F.2d 1410, 1413 (5th Cir. 1989) (citation omitted), *cert. denied*, 494 U.S. 1036 (1990). Standing "is a personal right which cannot be asserted

---

[10]    For an example of standing being allowed to be raised on appeal for the first time, see *United States v. Cardona*, 955 F.2d 976, 981-82 (5th Cir. 1992).

- 10 -

vicariously." **San Jacinto Sav. & Loan v. Kacal**, 928 F.2d 697, 704 (5th Cir. 1991).

It is uncontested that the package (with cocaine) was neither sent by, nor addressed to, Pierce. Arguably, a defendant who is neither the sender nor the addressee of a package has no privacy interest in it, and, accordingly, no standing to assert Fourth Amendment objections to its search. *See* **United States v. Koenig**, 856 F.2d 843, 846 (7th Cir. 1988). And, it may well be that even if Pierce claimed that he was the intended recipient of the package, this would not confer a legitimate expectation of privacy, because it was addressed to, and received by, another -- Hazel Crumpton. *See* **United States v. Givens**, 733 F.2d 339, 341-42 (4th Cir. 1984).[11] *See also* **United States v. Osunegbu**, 822 F.2d 472, 480 n.23 (5th Cir. 1987) (defendants had no standing to challenge examination by postal inspectors of unopened mail that was addressed to, and intended for, someone other than defendants).

Here, before and during trial, Pierce continually attempted to disassociate himself from the package. At a preliminary hearing, a Tyler police officer testified that Pierce denied ownership of the package and contended that it, and its contents, belonged to Crumpton. Further, Pierce argued, at the same hearing, that he had

---

[11]    *See also* **United States v. Richards**, 638 F.2d 765 (5th Cir.), *cert. denied*, 454 U.S. 1097 (1981), which involved a package addressed to a company owned by the defendant; the company, "in effect, was [the defendant]." **Id.** at 770. Here, the package was not addressed to a fictitious entity, or to an alter ego of Pierce, but to Crumpton. Although Crumpton may have had standing to raise Fourth Amendment objections, this personal right could not be asserted vicariously by Pierce.

never been in possession of the package, and, at that hearing and at trial, that his name was not "anywhere on that package". At no point, including during this appeal, has Pierce ever attempted to establish, much less prove, any privacy interest in the package. *See, e.g.*, ***Koenig***, 856 F.2d at 846. Indeed, his "only [admitted] interest in suppressing the package and its contents is to avoid its evidentiary force against him", an interest not protected under the Fourth Amendment. *Id.*

Lacking standing to object to the search, Pierce cannot show prejudice resulting from his counsel's performance concerning issues related to it. Therefore, the first two ineffective assistance claims must fail. *See* ***Fuller***, 769 F.2d at 1097.

## 2.

Pierce contends that his counsel was ineffective for failing to object, move for a mistrial, or request limiting instructions when evidence of his co-conspirators' guilty pleas was introduced through the testimony, including on redirect examination, of Crumpton and Angela Evans and referred to during closing argument by the government. However, "[a] witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose and a proper limiting instruction is given." ***United States v. Marroquin***, 885 F.2d 1240, 1247 (5th Cir. 1989), *cert. denied*, 494 U.S. 1079 (1990).

The record reflects that the government introduced Crumpton's and Angela Evans' plea agreements, not as evidence of Pierce's guilt, but to show that neither had received a "sweetheart deal" in

exchange for her testimony. In fact, defense counsel attacked both on cross-examination in an attempt to demonstrate that they "hope[d] to gain some favor of some kind, some kind of benefit out of saying this stuff in here today". Attempting to show that there is no "sweetheart deal" between the government and an accomplice witness is a legitimate reason for introducing a plea agreement. *Id.* Indeed, "[c]ounsel presenting witnesses of blemished reputation routinely bring out `such adverse facts as they know will be developed on cross-examination' in order to avoid even the appearance of an `intent to conceal.'" *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983) (quoting *United States v. Aronson*, 319 F.2d 48, 51 (2d Cir.), *cert. denied*, 375 U.S. 920 (1963)).

Moreover, the district court gave limiting instructions, including that "[t]he fact that a witness has entered a plea of guilty to the offense charged in this indictment is not evidence in and of itself of the guilt of any other defendant." Given that the plea agreement was introduced for a legitimate purpose, and that adequate limiting instructions were given, there was no error, and therefore, no ineffective assistance.[12]

### 3.

As noted, just before shipping the package (with cocaine) to Crumpton, Angela Evans picked up at the airport a package shipped from Tyler, Texas. She testified that it was from Pierce and

---

[12] Accordingly, Pierce's contention that these asserted failures deprived him of a fair trial also fails.

contained money in payment for cocaine.  Pierce claims that his counsel was ineffective for refusing, at Pierce's request, to cross-examine Evans on whether the money package was open when she received it.  However, no contention had been made that this package had been subjected to a search.  Indeed, Pierce's motions to suppress related solely to the cocaine package.  To the extent Pierce contends that this question is relevant to that search, we have already determined that he lacks standing to assert Fourth Amendment objections to it.  Because no prejudice is demonstrated from a refusal to ask this question, this ineffective assistance claim is also without merit.[13]

## B.

Pierce's remaining contentions fail to clear the procedural hurdle for a collateral challenge.

## 1.

Pierce maintains that he was denied due process because DEA agents gave perjured testimony concerning the Los Angeles search, in an effort to avoid it being governmental, rather than private, action, subject to the Fourth Amendment.[14]  Although this issue is

---

[13]    Citing *Rock v. Arkansas*, 483 U.S. 44 (1987), Pierce contends that his counsel's refusal to allow him to testify at the suppression hearing about Angela Evans' statement to him regarding the alleged open money package denied him his constitutional right to testify on his own behalf.  Even assuming that the testimony would have been admissible, Pierce, as noted, has failed to demonstrate the relevance of this issue, or any resulting prejudice.  Accordingly, this contention has no merit.

[14]    This contention stems from the district court finding, in ruling on the motion to suppress, that DEA agents "lie[d]" at the suppression hearing when they testified that Angela Evans was not under their surveillance at that airport before the cocaine package

advanced as one of constitutional magnitude, Pierce (who lacks standing to challenge the search) fails to demonstrate either cause for the procedural default (not raising the issue on direct appeal) or actual prejudice.

**2.**

The final contentions are that the prosecution misled the jury regarding benefits that Pierce's co-conspirators would receive from cooperating with the government; and that the government's attorney committed perjury in denying production of material to Pierce under the Jencks Act, 18 U.S.C. § 3500(b). Pierce has not raised these issues in the context of a constitutional violation, nor do we construe them as such. He fails to demonstrate either why they could not have been raised on direct appeal[15] or why, assuming error, condoning it would result in a complete miscarriage of justice.[16]

**III.**

For the foregoing reasons, the denial of § 2255 relief is

**AFFIRMED.**

---

was opened. However, it also found that the deception was unrelated to the search; that the surveillance "was reasonable under the circumstances"; and that the agents were not involved in the initial opening of the cocaine package. On direct appeal, this court held that the latter finding was not clearly erroneous. 893 F.2d at 673.

[15] On direct appeal, Pierce raised a Jencks Act contention about the same incident; but, it did not include a perjury element. 893 F.2d at 675.

[16] Because Pierce has not presented issues entitling him to § 2255 relief, his contention that the district court erred by not holding an evidentiary hearing on his § 2255 claims is moot.