UNITED STATES of America, Plaintiff,

v.

**Harry Thomas ABERNATHY a/k/a Jonathan Prince Abernethy, Defendant.**

No. 3:92CV144–S.

United States District Court, N.D. Mississippi, W.D.

Feb. 14, 1994.

---

Harry Thomas Abernathy, pro se.

Alfred E. Moreton III, U.S. Atty., Thomas W. Dawson, Asst. U.S. Atty., Oxford, MS, for U.S.

## OPINION

SENTER, Chief Judge.

On June 20, 1991, the defendant/petitioner, Harry Thomas Abernathy, was indicted on four counts of making false statements and reports to obtain bank loans and two counts of falsely using a social security number with the intent to deceive. On July 19, 1991, Abernathy entered into a plea agreement with the government in which he agreed to plead guilty to Counts One (making false statements) and Six (falsely using a social security number). In pertinent part, the agreement stated:

> The defendant, Harry Thomas Abernathy, agrees to give full and truthful statements to agents of the Drug Enforcement Administration, Federal Bureau of Investigation, Mississippi Bureau of Narcotics or other such agency ... as to all knowledge he may have of other person who participated

in these and/or similar type offenses, and to give full and truthful testimony before any federal grand juries and trial juries which may subpoena him about same.... The United States Attorney agrees to make known to the Court at the time of sentencing the nature and extent of all testimony and other cooperation given by this defendant. Upon completion of such cooperation, the United States reserves the right, *in its sole discretion,* to move the court pursuant to § 5K1.1 of the Sentencing Guidelines, for a departure based upon substantial assistance, or a Rule 35 reduction of sentence motion. *It is expressly understood by the defendant that the decision as to what constitutes substantial assistance and the decision to move the Court for a sentencing guideline departure based on substantial assistance or a Rule 35 motion is entirely within the discretion of the United States.*

(Emphasis added).

On August 24, 1991, this court held a Rule 11 hearing to allow Abernathy to enter his plea of guilty in accordance with the plea agreement. At that time, the following exchange between the court and Abernathy took place:

Q  The Government agrees to make known to the court at the time of sentencing the nature and extent of your testimony and other cooperation. And upon completion of such cooperation, the Government reserves the right *in its sole discretion* to move the Court ... for a departure based upon substantial assistance or a ... reduction of sentence motion. *Now, do you understand that the option to do that is strictly within the sole discretion of the Government?*

A  Yes, sir.

Q  And this Court will not sit in judgment as to whether or not they should or should not make those motions for a downward departure or for an amendment or reduction of sentence?

A  Yes, sir.

Q  Says there is no agreement as to the sentence in this case, and that ... the Government and you, Mr. Abernathy, understand, that, that is, *the matter of sen-*

*tencing, is in the sole discretion of the Court* subject, of course, to the Federal Sentencing Guidelines, which have been explained to you. I assume that you and your attorney have gone over the Federal Sentencing Guidelines and the changes—

A  Yes, sir.

Q  —and the various implications of them.

(Emphasis added).

After numerous continuances, Abernathy was finally sentenced on March 25, 1992. Initially, counsel for Abernathy and the Government advised the court that the parties had reached a stipulation that the amount of the loss to the banks was over $70,000.00 but under $120,000.00. Consequently, the offense level dropped from 15 to 12. Furthermore, the court determined at the outset that "in view of the fact that [Abernathy's] supervised release or probation ... ha[d] been revoked," the criminal history category rose from 5 to 6, thereby arriving at a guideline range from thirty to thirty-seven months. In turn, the court specifically questioned Abernathy himself about the stipulation and these conclusions:

Q  And, Mr. Abernathy, you understand this too?

A  Yes, Your Honor.

Q  And you understand you have a right, of course, to challenge this finding if you care to by Probation?

A  Yes, sir.

Q  But it's your desire to stipulate to it as announced by your counsel, that is, agree to that calculation?

A  That's correct.

After ruling on the remaining objections and being assured by both counsel that all objections had been resolved, the court again questioned Abernathy directly:

Q  Mr. Abernathy, are you satisfied with the Court's resolution of these objections, my findings?

A  Yes, sir.

Before sentence was pronounced, the Government advised the court that although Abernathy "did cooperate to the extent of providing information relative to the overall actions and the events in this case," it was

not in a position to move for a departure under § 5K1.1. The Government cited two reasons for its decision: (1) it did "not believe that the extent and the value [of the information provided] justify such a move," and (2) policy precluded the request because of "the criminal activity or offense conduct completed by this defendant subsequent to the plea agreement."

With all relevant matters having then been presented, the court sentenced Abernathy to thirty months imprisonment on each count to run concurrently and three years supervised release on each count to run concurrently and imposed a fine of $10,000.00 and a special assessment of $100.00. Restitution was not ordered "because the Court [was] unable to ascertain with reasonable accuracy the precise loss suffered by each of these financial institutions, and because the matter [was] then] in litigation in the civil courts." No further objections were interposed, and the court concluded the sentencing with the following observations:

> I'm going to tell you something. You may have conned another judge, because I came out here to give you about 46 months, the full dose. So don't ever say that your attitude doesn't help you....
>
> *       *       *
>
> Mr. Abernathy, you have the right to appeal any sentence imposed illegally or as a result of a miscalculation of the guidelines or outside the guideline range or one that is plainly unreasonable.

Abernathy did not pursue a direct appeal to the Fifth Circuit.

## DISCUSSION

This cause is now before the court on Abernathy's request for § 2255 relief. In his petition, Abernathy presents five questions:

(1) Whether the court erred when it held him accountable for the money losses from the dismissed counts of the indictment;

(2) Whether the court erred when it enhanced his sentence by six points based on the probable or intended loss of $70,000 to $120,000; [1]

(3) Whether the Government breached its plea agreement when it failed to bring his full cooperation to the attention of the court and when it failed to argue for a downward departure;

(4) Whether the court abused its discretion when it increased his criminal history category to Level 6 for the violation of supervised release;

(5) Whether he had ineffective assistance of counsel.

Having carefully considered the arguments advanced and the applicable case law, the court is of the opinion that the grounds raised in the instant petition either are foreclosed from collateral attack because of Abernathy's failure to appeal his sentence and/or are meritless. Issues 1, 2, and 4, which directly implicate the length of Abernathy's sentence, will be considered together. Issues 3 and 5 will be considered separately.

### I.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992). *See also United States v. Perez,* 952 F.2d 908, 909 (5th Cir.1992). "Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding," *Vaughn,* 955 F.2d at 368, unless the defendant is able to show cause for his procedural default and actual prejudice resulting from the error. *United States v. Drobny,* 955 F.2d 990, 994–95 (5th Cir.1992). *See also United States v. Pierce,* 959 F.2d 1297, 1300–01 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

Abernathy's claims that the court erred in calculating the length of his sentence do not

---

1. While the court was in the process of preparing this opinion, Abernathy filed a motion to amend his petition. In reality, the document attached to his motion is nothing more than additional argu-

ment as to why his sentence should not have been enhanced on the basis of the stipulated loss to the victim banks.

raise constitutional issues and could have been raised on direct appeal (as the court advised Abernathy at sentencing). Furthermore, there has been no showing as to why they were not. *See Vaughn,* 955 F.2d at 368 (technical application of Sentencing Guidelines does not raise constitutional issue); *Perez,* 952 F.2d at 909–10 (claims that defendant was entitled to credit for acceptance of responsibility and because he was minor or minimal participant do not constitute grounds for relief under § 2255). Therefore, Abernathy is procedurally barred from raising Issues 1, 2, and 4 in this collateral proceeding.

Assuming arguendo, however, that the court is in error on this point, it will nevertheless consider the merits of these questions.

### A.

■ With regard to the first issue of whether this court erred in holding Abernathy accountable for money losses from the dismissed counts of the indictment, the court is of the opinion that Abernathy's argument withstands neither legal nor factual scrutiny. In the first place, cases are legion in this circuit allowing the sentencing court to consider offenses for which a defendant has been indicted but not convicted, as well as the factual basis of the dismissed counts in determining the defendant's base sentencing level under the Sentencing Guidelines. *See United States v. Taplette,* 872 F.2d 101, 106 (5th Cir.), *cert. denied,* 493 U.S. 841, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989) ("the guidelines allow the consideration of relevant conduct for which the defendant was not convicted in determining the actual guideline range"); *see also United States v. Cockerham,* 919 F.2d 286, 289 (5th Cir.1990) (court properly determined that bank president's conduct under dismissed counts of 18-count indictment involving president's scheme to secretly share in benefits of real estate development loans was within same course of conduct as counts for which president was convicted, and thus could be considered "relevant conduct" for purpose of calculating president's offense level); *United States v. Ponce,* 917 F.2d 846, 848 (5th Cir.1990) (court properly included

drug transactions involving alleged co-conspirators even though conspiracy count was dismissed); *United States v. Byrd,* 898 F.2d 450, 452 (5th Cir.1990) (appellant contended that including as relevant conduct offense which he denied committing constituted punishment for unconvicted extraneous act; court held, "The sentencing court did not rely on these facts to punish the defendant for the extraneous offense but to justify harsher penalties for the offense for which he was convicted. This has previously been held appropriate").

■ In the second place, Abernathy stipulated to the amount of the dollar loss, which is less than the amount contained in Count One of the indictment, to which he pled guilty. It is therefore obvious that the amounts of the dismissed counts had no effect on the Guidelines range to which the government and Abernathy stipulated.

### B.

■ As to Issues 2 and 4, which involve the enhancement of Abernathy's sentence based on the amount of the loss and the increase in the criminal history category, the court finds the challenge meritless. At sentencing, Abernathy stipulated to the dollar loss range and affirmatively stated he was satisfied with the court's resolution of his objections, including any controversy about the loss amounts. Furthermore, Abernathy stipulated to the criminal history category increase after his supervised release was revoked by a federal district court in Florida in a separate case. The court specifically questioned Abernathy himself about these stipulations, and at that time, he expressed no objections and stated emphatically that he wished to enter into them. He will not now be heard to challenge these voluntary stipulations.

### II.

■ In Issue 3, Abernathy charges that the government breached its plea agreement by failing to move for a downward departure based on substantial assistance and by failing to inform the court of the extent of his cooperation "in order to allow the court to

make its own determination concerning the defendant's cooperation, and to allow the court to make a knowing decision as to whether to sua sponte give the defendant 5K1.1 consideration for departure." Both of these arguments have recently been expressly rejected by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit.

In *Wade v. United States,* 504 U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Court initially found that a sentencing court cannot grant a defendant a downward departure under § 5K1.1 in the absence of a government motion requesting such relief. *Wade,* 504 U.S. at ——, 112 S.Ct. at 1843, 118 L.Ed.2d at 530. It then held that § 5K1.1 "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted" and that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive," such as the defendant's race or religion. *Id.* at ——, 112 S.Ct. at 1843–44, 118 L.Ed.2d at 531. Furthermore, "[i]t follows that *a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy* or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." *Id.* (emphasis added).

Thereafter, the Fifth Circuit, interpreting *Wade,* held that where the plea agreement expressly gives the government absolute discretion to move for a downward departure under § 5K1.1, the government is granted the right "to receive information from the defendant and then exercise its discretion on whether to file for a downward departure." *United States v. Garcia–Bonilla,* 11 F.3d 45, 47 (5th Cir.1993). It further stated that when discretionary language is used in a plea agreement, the government is not obligated to move for a downward departure, and "[i]n the absence of such an obligation, the defendant is not entitled to relief under *Wade* unless the government's refusal to file a § 5K1.1 motion was based on an unconstitutional motive." *Garcia,* 11 F.3d at 47.

In this case, the government specifically reserved the right to determine "what constitutes substantial assistance" and to move, in its sole discretion, for a downward departure. At the plea hearing, the court questioned Abernathy about these points:

Q Now, do you understand that the option [to move for a downward departure] is strictly within the sole discretion of the Government?

A Yes, sir.

Q And this Court will not sit in judgment as to whether or not they should or should not make those motions for a downward departure or for an amendment or reduction of sentence?

A Yes, sir.

Because Abernathy does not argue that the government's refusal to move for a downward departure was based on an unconstitutional motive, and as the government retained sole discretion under the plea agreement to seek a downward departure for Abernathy's substantial assistance, the government's failure to file a § 5K1.1 motion did not constitute a breach of the plea agreement.

### III.

Finally, Abernathy charges that counsel retained by him for sentencing purposes was ineffective because he did not dispute the criminal history category calculated by the Probation Service and did not oppose the amount of the loss. This claim is "obviously of constitutional magnitude and satisf[ies] the cause and actual prejudice standard," *Pierce,* 959 F.2d at 1301, and therefore can be considered by this court in this collateral proceeding.

To succeed on a claim of ineffective assistance of counsel, Abernathy must show that: (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that except for the attorney's unprofessional errors, the results of the sentencing would have been different. *Id.* at 1302. Of course, counsel's judgment is given a heavy measure of deference. *Drobny,* 955 F.2d at 996.

Prior to sentencing, a dispute arose as to whether the value of collateral for the two fraudulently obtained loans should be considered in reducing the amount of the loss to the victim banks. At the time, the commentary to the Sentencing Guidelines was inconsistent,[2] and in the absence of the stipulation as to the amount of the loss, a hearing would have been necessary to determine the value of the collateral. This exercise could easily have resulted in a finding by this court which would have been quite unfavorable to Abernathy. *Cf. United States v. Blackburn,* 9 F.3d 353, 358 (5th Cir.1993) (Sentencing Guidelines allow use of amount of intended loss if intended loss can be determined and if it is greater than actual loss). His counsel knew this, and counsel's (and Abernathy's) decision to stipulate to the loss amount "may have been the better tactical move ... but even if it were not, this strategic choice certainly does not run afoul of prevailing professional norms, especially when [the court] defer[s] to ... counsel's judgment." *Id.,* 955 F.2d at 997.

 Between the time Abernathy entered his plea in this court and the time he was eventually sentenced, a federal district court in Florida revoked his supervised release in another matter. That order was a part of the presentence report presented to this court, and consequently, there was nothing to be gained from contesting the one-point increase in the criminal history category. Again, this was a strategical decision made by counsel and Abernathy himself which does not provide grounds for a valid claim of ineffective assistance of counsel.[3]

## CONCLUSION

Having found no grounds for relief, the court is of the opinion that Abernathy's request for § 2255 relief is not well taken and

is denied. An appropriate final judgment shall issue.

## FINAL JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That the petition seeking relief under 28 U.S.C. § 2255 is not well taken and is denied;

That this cause is hereby dismissed with prejudice.

---

2. The first part of note 7 to § 2F1.1 of the 1991 Sentencing Guidelines stated that if an intended loss could be determined, that figure should be used if it was greater than the actual loss. Further down, however, in subsection (b), the note stated that in a fraudulent loan application case, the loss was the actual or expected loss to the victim. This inconsistency was cleared up by the 1992 Guidelines by adding the following language to (b): "However, where the intended loss is greater than the actual loss, the intended loss is to be used."

3. In fact, Abernathy found his counsel so ineffective that he later retained him to file a motion for release on bond pending the disposition of the instant § 2255 complaint.