United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 16, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 03-31098

)))))))))))))))))))))))))))

UNITED STATES OF AMERICA

Plaintiff-Appellee

vs.

JAMES EDWARD PARKS

Defendant-Appellant

)))))))))))))))))))))))))))

No. 04-30011

)))))))))))))))))))))))))))

UNITED STATES OF AMERICA

Plaintiff-Appellee

vs.

HOYLE WOOD

Defendant-Appellant

)))))))))))))))))))))))))))

No. 04-30012

)))))))))))))))))))))))))))

UNITED STATES OF AMERICA

Plaintiff-Appellee

vs.

ANTHONY MORRIS JOHNSON

Defendant-Appellant

))))))))))))))))))))))))))))))

No. 04-30021

)))))))))))))))))))))))))))))

UNITED STATES OF AMERICA

Plaintiff-Appellee

vs.

STEVEN HOYLE WOOD

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Louisiana

Before REAVLEY, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

This is a drug conspiracy case involving four Defendants-
appellants: Anthony Johnson, James Parks, Steven Wood, and Hoyle
Wood ("Defendants"). All Defendants challenge the district
court's denial of their motions to suppress a Federal Express
("FedEx") package containing crystal methamphetamine. Defendant
Parks additionally challenges the propriety of venue in the
Western District of Louisiana; the sufficiency of the evidence to
support his conviction; and the admission of a DEA agent's

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

testimony, which he claims violated *Brady v. Maryland*. Parks also claims that a note passed from the trial judge to the jury improperly induced the jury to find Parks guilty. Because none of these arguments have merit, we will affirm the convictions of all four Defendants.

I. Background

On August 27, 2002, FedEx employee Ernest Stroud was working as a "gatekeeper" at the Shreveport, Louisiana terminal for FedEx. Gatekeepers deal with problem packages. Stroud came into possession of a package sent on the Grand Cane route that had been returned because there was no legible address or telephone number and no tracking information. Stroud opened the package in order to find an address, or other identifying information, which would allow FedEx to deliver the package. The ends of the package were open, and it contained what Stroud described as some "crystalized, powdery, white looking stuff." Stroud believed the substance to be crystal methamphetamine and turned the box over to his manager, Corey Young. Young testified that when the address on a package cannot be read, FedEx procedure is for an employee to open the package in the hopes of finding correspondence with an address or phone number. Young testified that the contents resembled little pieces of ice or crystals. Stroud told Young that he believed the substance to be crystal or "ice" methamphetamine.

2

That day, Young received a call from a woman who was hysterically searching for a package. The caller was later identified as Lauren Wommack. Wommack told Young that she would lose her job if she did not get the package that day. Young told Wommack to come to the facility before 8pm and FedEx would attempt to locate the package.

Young recalled that about a month or two prior, Agent Webb of the Drug Enforcement Agency ("DEA") had asked him to be on the lookout for any packages addressed to Lauren Wommack of Grand Cane. When Young realized that the hysterical caller might be Wommack, he called Agent Webb.

Agent Webb, the Shreveport Police, and Young then orchestrated a controlled delivery of the package. Young repackaged the contents for delivery. Wommack arrived at the FedEx terminal and handed one of the workers a slip of paper containing the tracking number of the package and the phone number of Steven Wood. While Wommack waited for the package, Shreveport police cars pulled into the parking lot. Because of the police presence, Wommack refused to sign for the package. After tests confirmed that the package contained methamphetamine, Wommack was arrested.

Wommack cooperated with police. She told them that the package was addressed to her but she had instructions from Anthony Johnson to deliver the contents to Hoyle and Steven Wood

3

(collectively "the Woods"). Pursuant to a police directive, Wommack made plans to meet with Johnson at a Holiday Inn in Minden, Louisiana. When Johnson arrived, he was arrested. The Woods were also arrested based on information police learned from Wommack.

Johnson also cooperated with police and agreed to make phone calls to his buyers. Some of these conversations were taped. One of the taped conversations with James Parks was lost before trial and is now the subject of Parks's *Brady* challenge.

DEA agents in Tennessee assisted in a controlled delivery from Johnson to Parks. Agents searched Parks's residence pursuant to a warrant obtained before, but executed after, the delivery. They found a piece of paper with Johnson's phone number and the tracking number of the FedEx package sent in the controlled delivery. Parks was then arrested.

Wommack, Johnson, Parks, and the Woods were indicted on one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846. Johnson was also charged with an additional count of possession with intent to distribute. Wommack cooperated with police, pleaded guilty, and is not a party to this appeal.

All four remaining Defendants filed motions to suppress the drugs seized from the FedEx package addressed to Wommack. The district court denied their motions. Johnson and the Woods all

4

pleaded guilty, reserving their right to appeal the denial of their motions to suppress. That is the only issue they have raised on appeal.

Parks tried his case to a jury and was convicted. In addition to challenging the denial of his motion to suppress, Parks challenges his conviction on four additional grounds.

## II. Whether the District Court Properly Denied Defendants' Motions to Suppress

### A. Standard of Review

When a district court denies a defendant's motion to suppress on Fourth Amendment grounds, we review the district court's fact findings for clear error and its conclusion as to the constitutionality of the search de novo. *United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001). We view the facts in the light most favorable to the prevailing party. *Id.* The defendant has the burden of proving a Fourth Amendment violation by a preponderance of the evidence; once the defendant has met this burden, the burden shifts to the government to prove that an exception to the exclusionary rule applies.[1] *See id.*

### B. Discussion

#### 1. Standing of Parks, Steven Wood, and Hoyle Wood

Even if a search is unreasonable, for the exclusionary rule to apply in favor of a particular defendant he must prove that

---

[1] The government has not alleged that any exception applies to the facts of this case.

his own Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 133 (1978) ("Fourth Amendment rights are personal rights which ... may not be vicariously asserted."). The government concedes that Johnson, as the sender of the FedEx package, had a reasonable expectation of privacy in its contents. Therefore, only the standing of Parks and the Woods is at issue in this case.

The Defendants first claim that the government waived its standing challenge because it did not raise the issue before the district court. The seminal case on waiver of standing is *Steagald v. United States*, 451 U.S. 204 (1981). In *Steagald*, the Supreme Court held that "[t]he Government ... may lose its right to raise [the standing issue on appeal] when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." *Id.* at 209. In *United States v. Irizarry,* however, we distinguished the situation where the government waives its challenge to a defendant's standing from the situation where the defendant does not carry its burden of proof on the standing issue in the first place. 673 F.2d 554, 556–57 (5th Cir. 1982). In that case, we stated:

> We realize that the government did not challenge [the
> defendant's] standing, either before the trial court or
> on appeal. That fact, however, does not alone bring us
> within the rule of [*Steagald v. United States*], in

6

> which a defendant's standing was held to be beyond further challenge. In [*Steagald*] the government failed to challenge facts from which the defendant's standing could reasonably have been inferred. In this case, [the defendant] never carried his initial burden of offering facts from which a court might reasonably infer his standing.

*Id.* (citations omitted); *United States v. Torres*, 32 F.3d 225, 229 (7th Cir. 1994) ("The government does not waive its right to challenge a defendant's standing when no facts were adduced at the hearing from which the government could reasonably have inferred the existence of the defendant's standing.").

Here, the Defendants have not alleged any *Steagald*-like behavior on the part of the government. Accordingly, the government has not waived its standing challenge, and we will consider the issue.

Parks's claimed connection to the FedEx package is that its search led to the arrest of Johnson, whose cooperation led to the arrest of Parks. The Woods are similarly situated: neither were listed as an addressee on the package, but Wommack testified that she had instructions from Johnson to deliver the contents of the package to the Woods. Neither connection is sufficient.

It is well-settled that a defendant's status as a co-conspirator, without more, is not enough to confer standing on him for Fourth Amendment purposes. *United States v. Padilla*, 508 U.S. 77, 81 (1993). No Defendant has articulated facts which would bring his case outside the purview of this rule. Moreover,

7

our decision in *United States v. Pierce*, 959 F.2d 1297 (5th Cir. 1992), is directly on point. There, Evans presented a package to an American Airlines employee, McAdams, at LAX airport for shipment to Tyler, Texas. *Id.* at 1299. Evans told McAdams that the package contained an iron, but McAdams was suspicious because the package was too light to contain an iron. *Id.* He opened it after Evans left, and upon discovering cocaine, alerted authorities who arranged for a controlled delivery to Crumpton. *Id.* at 1299. Crumpton was arrested when she picked up the package at the Tyler airport. *Id.* at 1300. Pierce, who had driven Crumpton to the airport and who was waiting for her in the car, was also arrested. *Id.*

Addressing Pierce's claim that the search at LAX violated the Fourth Amendment, we stated:

> It is uncontested that the package (with cocaine) was neither sent by, nor addressed to, Pierce. Arguably, a defendant who is neither the sender nor the addressee of a package has no privacy interest in it, and, accordingly, no standing to assert Fourth Amendment objections to its search. And it may well be that even if Pierce claimed that he was the intended recipient of the package, this would not confer a legitimate expectation of privacy, because it was addressed to, and received by another——[Crumpton].

*Id.* at 1303 (citations omitted). Because Pierce's "only [admitted] interest in suppressing the package and its contents [was] to avoid its evidentiary force against him," we rejected his Fourth Amendment claim. *Id.* Both the Fourth and Seventh

8

Circuits have also rejected the Fourth Amendment challenges of similarly-situated defendants on standing grounds. *See United States v. Givens*, 733 F.2d 339, 341–42 (4th Cir. 1984); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988)(both holding that a defendant who was neither the sender nor the addressee of the package lacked standing to contest the legality of its search). Here, neither Parks, Steven Wood, nor Hoyle Wood have any interest in the FedEx package other than avoiding its evidentiary force against them. They lack standing to challenge the search. Accordingly, we affirm their convictions.

### 2. Fourth Amendment Violation

After Wommack refused to accept the FedEx package, law enforcement opened it and conducted field tests on it, confirming that the crystalized powder was, indeed, methamphetamine. Johnson argues that the opening of the package and the testing of its contents were unreasonable searches that violated the Fourth Amendment. We disagree.

This case is controlled by the Supreme Court's opinion in *United States v. Jacobsen*, 466 U.S. 109 (1984), a case with similar facts.[2] First, "*Jacobsen* directs courts to inquire whether the government learned something from the police search that it could not have learned from the private searcher's

---

[2] Johnson argues that his case is distinguishable from *Jacobsen* in several ways. We find those arguments unavailing.

9

testimony and, if so, whether the defendant had a legitimate expectation of privacy in that information." *United States v. Runyan*, 275 F.3d 449, 459–61 (5th Cir. 2001).  Here, when law enforcement officers initially opened the package, they did not learn anything other than that it contained white powder.  FedEx employees Stroud and Young, who had previously viewed the package's contents, would have been able to testify to as much. *See Jacobsen*, 466 U.S. at 119 ("Respondents do not dispute that the Government could utilize the Federal Express employees' testimony concerning the contents of the package.").  This initial intrusion into Johnson's privacy, if any, did not exceed the scope of the private search that had already taken place. *See id.*  Under *Jacobsen*, this act was not a search within the meaning of the Fourth Amendment.  *Id.*

Second, *Jacobsen* squarely held that field tests which can only detect that a substance is a particular drug (be it cocaine or methamphetamine), but cannot detect what that substance is if the test results are negative, are not searches.  *Id.* at 123. Johnson has not asserted that the field tests conducted in this case could determine what the powder actually was, if it was not methamphetamine.  Therefore, the tests conducted here were also not searches within the meaning of the Fourth Amendment.

*Jacobsen* requires us to reject Johnson's Fourth Amendment argument.  We therefore affirm his conviction.

10

III. Parks's Additional Arguments

Parks asks us to reverse his conviction on four additional grounds.

A. Venue

Parks first argues that venue was improper in the Western District of Louisiana. We generally review venue questions for abuse of discretion, but since "[a] district court by definition abuses its discretion when it makes an error of law," the standard of review is effectively de novo. *United States v. Delgado-Nunez*, 295 F.3d 494, 496 (5th Cir. 2002) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Parks was charged with conspiracy to possess with intent to distribute a certain amount of methamphetamine. Therefore, venue is determined under 18 U.S.C. § 3237(a), which provides:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>     Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a) (2000). Under § 3237(a), then, Parks can be prosecuted in any district in which the conspiracy began, continued, or was completed, even if he has never set foot in

11

that district.  *United States v. Caldwell*, 16 F.3d 623, 624 (5th Cir. 1994); *Hyde v. United States*, 225 U.S. 347, 362 (1912).

Parks argues that because the jury found him guilty of conspiracy to possess/distribute more than 5 grams of methamphetamine, instead of the 50 grams for which he was indicted, the jury must have based its decision solely on the controlled delivery transaction from Johnson in Mississippi to Parks in Tennessee.  According to Parks, since none of the acts relating to the controlled delivery took place in the Western District of Louisiana, he could not be tried there.

Yet Parks was convicted of being part of the overall conspiracy; the jury just limited his liability to a lesser amount of methamphetamine than that charged.  Moreover, multiple overt acts took place in the Shreveport area: methamphetamine was sent to Shreveport where Wommack attempted to pick it up; Wommack told police that during the summer of 2002, Johnson had sent approximately eight shipments of methamphetamine to her in Shreveport; Johnson met with Wommack in Minden, Louisiana, where he was arrested; and while cooperating with police, Johnson made several phone calls to Parks from the Shreveport area.  *See United States v. Caldwell*, 16 F.3d 623, 625 (5th Cir. 1994)(holding that venue was proper in the district where calls were received); *United States v. Strickland*, 493 F.2d 182, 187 (5th Cir. 1974) (upholding venue in the Northern District of

12

Georgia on account of telephone calls made to and from Atlanta).

Accordingly, we reject Parks's venue challenge.

B. The Sufficiency of the Evidence

Parks claims that there was insufficient evidence that he intended to distribute the drugs. The standard of review for a sufficiency challenge is whether "a rational trier of fact could have found that the evidence establishes the essential elements of the offense beyond a reasonable doubt." *United States v. Brugman*, 364 F.3d 613, 615 (5th Cir. 2004) (quoting *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003)). We review the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict. *Id.* (citing *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002)). The evidence need not exclude every reasonable hypothesis of innocence, and the jury is free to choose among reasonable interpretations of the evidence. *Id.* (citing *United States v. Perrien*, 274 F.3d 939-40 (5th Cir. 2001)).

Johnson testified at trial that he had sent methamphetamine to Parks on two or three different occasions, and that Parks was getting the drugs for another individual named Andy. When Johnson was arrested, officers found an airbill showing that a "Randy Johnson" had sent a FedEx package to "J. Parks." Johnson also testified that during one telephone conversation, he told

13

Parks that "glass" (crystal methamphetamine) was on its way and Parks responded, "I thought you sent the regular" (powder methamphetamine). According to Johnson's testimony, Parks then stated, "But there isn't that much of that ["glass"] up here so that's okay."

In *United States v. Medina*, we upheld a conspiracy conviction on the sole testimony of a co-conspirator, stating that "[a]s long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict." 161 F.3d 867, 872–73 (5th Cir. 1998) (quoting *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997)). Where the co-conspirator's testimony is not factually impossible or incredible, the jury's decision to believe the testimony must be respected. *Id.* at 873; *United States v. Landerman*, 109 F.3d 1053, 1067–68 (5th Cir. 1997); *United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992). Here, Johnson's testimony was sufficient to support the jury's finding that Parks intended to distribute the drugs.

C. *Brady* Challenge

After Johnson was arrested, he made several phone calls to his buyers, including Parks, that were taped by police. One phone call to Parks was inexplicably lost by the government before

14

trial.  A DEA agent who heard the taped conversation testified to its contents at Parks's trial.  Parks claims that the agent's testimony violated *Brady v. Maryland*, 373 U.S. 83 (1963), because he did not discuss a drug transaction on the missing tape, contrary to the agent's testimony.

Prosecutorial suppression of material evidence favorable to an accused violates due process.  *Brady*, 373 U.S. at 87 (1963).  To succeed on a *Brady* challenge, a defendant must prove three things: (1) that the evidence was favorable, (2) that the state suppressed the evidence, and (3)that the evidence was material.  *United States v. Hughes*, 230 F.3d 815, 819 (5th Cir. 2000).  Parks cannot meet this test.

Specifically, Parks has not alleged any misconduct on the part of the government, i.e., that the government suppressed the tape.  In *United States v. Lassiter*, we rejected a defendant's *Brady* challenge because "[the defendant] ha[d] not claimed that the prosecution *suppressed* evidence, only that the prosecution *lost* evidence."  819 F.2d 84, 86 (5th Cir. 1987).  That is all Parks alleges here.  We therefore reject his *Brady* challenge.

D. <u>Note from Trial Judge to Jurors</u>

During jury deliberations, the jury sent a note to the judge stating, "We need some direction.  Please come to the jury room."  In response, the judge sent a handwritten note to the jury, which stated:

> I am sorry I can't do as you ask. If you write your questions I will first consult with the lawyers before I answer. Then I will answer in writing—*so if I do it wrong it will be in the record for the appeals court*. Or we can bring you back into the court room.

(Emphasis added). Parks claims that the portion of the note referring to the appellate court improperly induced the jury to find Parks guilty.

The four cases cited by Parks are not on point. Those cases concern a trial judge's ex parte communication with a juror; as Parks concedes, however, that was not the case here. *See United States v. Gypsum*, 438 U.S. 422, 460 (1978) (warning of the dangers inherent in a judge's ex parte communication with jurors); *United States v. Peters*, 349 F.3d 842, 846–47 (5th Cir. 2003) (reversing the defendants' convictions where trial judge met ex parte with a juror because of the risk that the judge insisted on a verdict); *United States v. Cowan*, 819 F.2d 89, 91 (5th Cir. 1987) (reversing the defendant's conviction after the judge met ex parte with each juror about the jury's obligation to reach a verdict); *Demetree v. United States*, 207 F.2d 892, 896 (5th Cir. 1953) (reversing a defendant's conviction after the judge bargained with jury foreperson ex parte that if the jury returned guilty verdict the defendant would only get probation or a fine). The government responds that the judge's note was merely an explanation to the jury that all correspondence must be in writing. The government has the better argument. Accordingly, we affirm Parks's

16

conviction.

IV. Conclusion

For the foregoing reasons, we AFFIRM the convictions of all Defendants.

AFFIRMED.

17